STATE OF TENNESSEE ex rel.
DR. B. G. STALL et al.

*v.*

CITY OF KNOXVILLE.

STATE OF TENNESSEE ex rel. the WEST KNOX UTILITY
DISTRICT OF KNOX COUNTY, TENNESSEE,

*v.*

CITY OF KNOXVILLE.

STATE OF TENNESSEE ex rel. WILLIAM E. BADGETT et al.

*v.*

CITY OF KNOXVILLE.

STATE OF TENNESSEE ex rel. DEANE-HILL COUNTRY CLUB,
INC. and DR. RALPH MONGER et al.

*v.*

CITY OF KNOXVILLE.

364 S. W. 2d 898.

(*Knoxville*, September Term, 1961.)

(May Session, 1962.)

Opinion filed September 7, 1962.

Rehearing Denied October 4, 1962.

G. EDWARD FRIAR, WILLIAM A. REYNOLDS, Knoxville, for Dr. B. G. Stall et al.

OSCAR M. TATE, JR., Knoxville, for West Knox Utility Dist.

WILLIAM E. BADGETT, Knoxville, pro se and for Deane-Hill Country Club, Inc.

DEXTER CHRISTENBERRY, Knoxville, for Dr. Ralph Monger et al.

C. R. McCLAIN, Knoxville, for appellee.

MR. JUSTICE WHITE delivered the opinion of the Court.

The City of Knoxville, acting through its governing body, enacted Ordinances No. 3049, 3050, 3052 and 3053 which annexed to the City the property therein described. These ordinances were passed under the provisions and

in accordance with Chapter 113 of the Public Acts of 1955, appearing now as Sections 6-309 et seq. T.C.A.

On December 8, 1960 the complainants, Dr. B. G. Stall, et al, commenced an action in the First Circuit Court for Knox County in the nature of a quo warranto proceeding contesting the validity of all of said Ordinances. The Trial Court upheld the validity thereof and from his action in so doing the parties have appealed and assigned errors.

The pleadings show that the petition of Stall et al. was brought on behalf of himself, Floyd Bradburn, Hugh Metz, Charles M. Burton, et al. and it is therein alleged "that they are citizens and residents of, and owners of both real and personal property situated within Knox County, Tennessee, in the area sought to be annexed, as hereinafter defined. They are 'aggrieved owners of property' within such area sought to be annexed * * * and as such, bring this suit in the nature of a quo warranto proceeding in behalf of themselves and all other aggrieved owners of property similarly situated".

The Deane Hill Country Club filed a suit in the Second Circuit Court of Knox County attacking the validity of Ordinance No. 3050 only, and W. E. Badgett, et al. filed an action in the same Court attacking the validity of Ordinance No. 3052 only. The technical record does not show the hour or time of the filing, but it does show they were also filed on December 8, 1960.

On December 20, 1960 West Knox Utility District of Knox County filed a petition in the First Circuit Court attacking the validity of Ordinance No. 3050, and on December 22, 1960 Dr. Ralph Monger filed a supplemental

petition to that filed by the Deane Hill Country Club, attacking the validity of the same ordinance. The City of Knoxville demurred to these petitions and the demurrers were sustained in part and overruled in part. The City then moved for a consolidation of all cases, one of which contested the validity of all four ordinances and four of which contested an individual ordinance.

As indicated above, some of the petitions were originally filed in the First Circuit Court and others in the Second Circuit Court. The Judges of these two Courts signed a joint decree consolidating all of the cases with the Stall case which attacked the validity of all four ordinances. Judge Cole of the Second Circuit Court then recused himself from hearing the cases due to an interest in some of them prior to his elevation to the bench. The cases were then heard by Judge Kelly. Based upon the evidence adduced at the hearing which extended over a considerable period of time Judge Kelly withdrew the cases from the jury and ruled in a memorandum opinion that all such ordinances were valid. From a final decree adverse to them, all of the relators appealed.

It is provided in T.C.A. sec. 6-310 that the issue in a suit attacking the validity of an annexation ordinance is whether the "* * * proposed annexation be or be not unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and the citizens and property owners of the municipality. * *"

The petitions and the appeals, however, raise other issues, including an attack on the constitutionality of the ordinances and attacks on certain procedural matters in the trial of the cases.

■ ■ Relators cite as error the action of the Trial Judge in sustaining demurrers to their attacks on the constitutionality, under both the State and Federal Constitutions, of the ordinances and the statutes under which they were passed. We think the action of the Trial Court was proper in this regard. The constitutionality of the statute was upheld in *Witt v. McCanless,* 200 Tenn. 360, 292 S.W.2d 392, and again in *Morton v. Johnson City,* 206 Tenn. 411, 333 S.W.2d 924, and was considered established in *Knoville v. State ex rel. Graves,* 207 Tenn. 558, 341 S.W.2d 718. These cases established the constitutionality of the statute in question and, therefore, if these ordinances under attack meet the requirements of the statutes they are valid and constitutional.

■ The Relators contend that the ordinances are invalid because there was not a proper public hearing on them before they were passed. T.C.A. sec. 6-309 requires "Notice and public hearing" before the governing body of a municipality may lawfully act upon an annexation ordinance. In *Morton v. Johnson City,* supra, the criteria for a "public hearing" as intended by the statute was established. The Trial Judge found in the instant cases that these requirements were met, and the record clearly supports him in this regard. Proper notice of the hearing was given. It was held at the time and place designated in the notice. The Council members were present with the Mayor presiding, the doors were opened to the public. The record shows that opinions and discussions were invited and that many opinions were given and much discussion was had. The council chambers might not have seated all who wished to come. However, the record shows that the meeting lasted for several hours and anyone who wished to be heard had the opportunity.

We think that this public hearing fully complied with the intent and purpose of the statute as the Trial Court so held in its opinion:

> "These factors of time, place, the privilege of being heard and councilmanic attendance, gave to the occasion the legal character of a public hearing as contemplated by the law and the Court so finds and holds."

It is next contended that these ordinances are invalid because no plan of services for the annexed territories was adopted by the City prior to their passage. This requirement was added to T.C.A. sec. 6-309 by an amendment which became effective March 17, 1961.

The ordinances in question were passed on November 22, 1960. Therefore, this amendment was not in effect at the time of the passage of said ordinance.

In the case of *State ex rel. Hardison* v. *City of Columbia,* 210 Tenn. 514, 360 S.W.2d 39, which opinion was prepared for the Court by Mr. Justice Burnett, and is being delivered simultaneously with this opinion, it is held:

> "There was nothing in the amendment which in any way shows that it was intended to be retroactive, that is, apply to ordinances passed before its passage * * *. The statute here in question is merely setting forth an addition to the substantive law of annexation as to what is required by the City fathers before enacting these annexation ordinances. It in no way affects the procedural policy of the law. If what was done at the time these ordinances were passed was valid, this statute in no sense attempts to make what was valid

and had been done before invalid. It merely applies to the future and not to the past."

We think this answers all contentions on this point in the case before us including the contention that the ordinances herein have not been "passed" since they are not effective until their validity is determined by the Courts. The holding of the City of Columbia case, supra, is that all annexation ordinances passed prior to March 17, 1961 are not affected by this amendment requiring adoption of a plan of services before annexing a large territory as described therein. All ordinances passed after the date of March 17, 1961 are required to comply with the amendment.

The next assignment argued by the Relators is that it was error to try these consolidated actions in the First Circuit Court of Knox County. In support of this argument they show that T.C.A. sec. 6-310 requires that consolidated annexation cases be tried "in the first court of appropriate jurisdiction in which suit is filed". They contend that the petitions of Relators Badgett and Deane Hill Country Club were filed in the Second Circuit Court prior to the filing of the Stall petition in the First Circuit Court.

The record does not disclose whether the Stall petition, the Badgett, or the Deane Hill petitions were filed first in point of time. There are motions before us for a diminution of the record to show that the latter two were filed first, but it is unnecessary to rule on this motion for reasons appearing herein.

As further error, they contend that the acts of Judge Kelly of the First Circuit Court were void because

he was not appointed to interchange for Judge Cole of the Second Circuit Court, who recused himself. They contend that application should have been made to the Chief Justice of the Supreme Court for the assignment of a Circuit Judge to hear the cases.

That such application is not necessary seems abundantly clear from the following statutes:

"T.C.A. sec. 17-207. Interchange by circuit judges. —The circuit judges may interchange with each other or with judges of special courts for one or more courts, or parts of courts, when causes exist making an interchange necessary, or for mutual convenience; * * *."

No mention is made of any requirement for application to the Chief Justice, nor do the rules of the Supreme Court disclose any such requirement. It would seem even less necessary where three circuit judges have courts within the same county which are held in the same building.

█ Though the various orders and the opinion in these records recite "in the First and Second Circuit Court for Knox County", they all recite that Judge Kelly was sitting by interchange, or were signed by him as "Judge by Interchange". We have held that there is no necessity that the record show that a judge was sitting by interchange, *Cornwell v. State,* 8 Tenn. 147, and that a defendant in a disbarment proceeding was not prejudiced by failure to receive notice that the judge would be sitting by interchange, *State v. Bomer,* 179 Tenn. 67, 162 S.W.2d 515. In the instant case, Judge Cole recused himself because of prior interest in the case and Judge Kelly sat by interchange. In this we find no error.

The next assignment of error is that it was improper to consolidate these cases for trial.

The argument is that the motion to consolidate was made and granted under Section 6-310 T.C.A. This was error, the Relators contend, because the statute only calls for consolidation of cases which contest the *same* ordinance of annexation. The Relators say that they were thus consolidated with cases involving three other ordinances which in turn involved different territories and, therefore, entirely different and distinct questions of fact. All of this argument is based on the fact that said section uses the term "ordinance" in the singular throughout.

The City of Knoxville answers that the Relators, Stall, Bradburn, Metz, Burton, et al. chose to try the validity of the ordinances together by filing one suit attacking all of them. This petition was filed on behalf of those named and all others similarly situated within the areas affected by the ordinances.

A demurrer was filed to this petition on January 20, 1961. It was sustained in part and overruled in part by an order of the Court dated February 28, 1961. On March 1, 1961 the defendant, City of Knoxville, filed an answer to said petition.

On March 17, 1961 an order was entered in this case stating "by consent of the parties, the above captioned cause is set for trial on June 26, 1961". This order was entered at the January 1961 term of Court. The next term of Court for the Third Judicial Circuit commenced on the first Monday in May, 1961. (Section 16-209 T.C.A.). Therefore, the case was set for trial at the next

term of Court occurring after the cases were at issue and more than ninety (90) days after the consent order was signed and entered on March 17, 1961.

On June 16, 1961 the Relators Stall, et al. filed an amended and supplemental petition, without prior leave of the Court, in so far as the record discloses.

Section 21-109 T.C.A. provides that the complainant in such a case as this "can amend his bill only by leave of the chancellor, and upon such terms as he may impose. The court may, at any stage of the cause, even after argument, if it be thought necessary to justice, permit amendments of the bill, upon such terms as may appear reasonable."

The Trial Court treated this as a continuation of the original bill and treated the filing of the "plan for services for the annexed areas" as sufficient answer to the amended and supplemental bill. In so doing the Trial Court followed the holdings in *Wilson v. Beadle* 39 Tenn. 510, *Bradley v. Dibrell,* 50 Tenn. 522; and *Lookout Bank v. Susong,* 90 Tenn. 590, 18 S.W. 389. However upon the suggestion of the Court the defendant did file an answer to such amended and supplemental petition on June 27, 1961, which added nothing to the original answer in so far as the issues to be decided by the Court were concerned.

Thus we have a situation where an attack was made upon all ordinances by parties sui juris and who were proper parties under Section 6-310 T.C.A. and were "aggrieved owners", as therein set out. They exercised the judgment of bringing all of the suits in one petition. They consented that all cases would be tried together on June 26, 1961 by the order dated March 17, 1961.

Section 6-310 T.C.A. provides that "[a]ny aggrieved owner of property lying within territory which is the subject of an annexation ordinance * * *, may file a suit in the nature of a quo warranto proceeding * * *, to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole * * *."

The section further provides that if more than one suit is filed all of them shall be consolidated and tried as one in the first court of appropriate jurisdiction in which suit is filed. The cause of Stall, et al. was the first case ready for trial in a court of appropriate jurisdiction and, therefore, it was the duty of the Court to proceed with the trial of this case first in point of order.

When these cases were set for trial none of the other cases attacking the validity of the same ordinances were at issue; demurrers having been overruled but no answers filed. The Court was faced with the problem of trying the case of Stall, et al. and postponing the trial of the other cases to a later date, or trying all of these cases together thereby permitting a full and complete hearing of all complaining parties in one proceeding.

Section 20-1207 T.C.A. provides: "The clerk shall enter causes upon his trial docket in the order in which they become ready for trial, giving the cause first ready for trial, either by due course of law or consent of parties, priority of position on the docket. If a number of causes become ready for trial at the same time, they shall be entered on the docket in the order of their commencement." The cause of Stall, et al. became ready for trial on March 17, 1961, and by consent of the parties it was

set for trial on June 26, 1961. Therefore, it had priority under the general rules of procedure and under the above statute. Therefore, the Trial Court was exactly correct in proceeding with the trial of this cause in accordance with the agreement of the parties and in accordance with the law of this State.

The Trial Court in the interest of the proper administration of justice and in an effort to see that all complaining parties had their day in Court ordered the other aggrieved parties to become parties and participate in the cause of Stall, et al. This was the proper procedure despite the fact that the Court could have postponed the hearing of all the causes except that of Stall et al. until the final determination of the issues in that case. If the Court had followed this procedure, then the other aggrieved parties would never have had, in all probability, an opportunity to be heard.

Section 6-310 T.C.A. provides:

"If on appeal judgment shall be against the validity of such ordinance, an order shall be entered vacating the same; otherwise, it shall become operative forthwith by court order and shall not be *subject to contest or attack in legal or equitable proceeding for any cause or reason, the judgment of the appellate court being final.*" (Emphasis supplied.)

Therefore, we hold that the Trial Judge was correct in granting the order of consolidation and requiring that all petitions be heard at the same time. Whether the Court treated the petitions of Deane Hill Country Club, Inc., William E. Badgett, et al., Dr. Ralph Monger, et al. and West Knox Utility District in the nature of intervenors, or the filers of amended or supplemental petitions

to the case of Stall; et al. which came at issue first, and, therefore, had priority in trial, is immaterial. All parties were before the Court, the defendant was the same in all cases, all suits were in the same vein, all answers were in the form of general denials after the demurrers were overruled, and the cardinal question of fact in each case was whether the ordinances were reasonable or unreasonable.

The hearing of all these cases was not without difficulty in the Trial Court. However, the Judge who heard them has had a long and distinguished career on the bench and has learned over a period of years how to accept, assess and evaluate testimony, sifting, separating and weighing the same in order that he might arrive at a proper and just decision.

The questions involved were of law and fact or of mixed law and fact, and at the conclusion of all the proof the Trial Judge properly concluded that it was his obligation to make a decision in these cases without the intervention of a jury. In so doing he very properly followed the case of *Morton v. Johnson City,* supra.

In the memorandum opinion filed by the Trial Judge at the conclusion of the hearing he held:

"The record before us discloses that all statutory conditions, preliminary to annexation, have been complied with in the enactment of the ordinances. As required by the law, the territories sought to be annexed adjoin and are contiguous to the existing boundaries of the municipality. * * *"

"In the annexation of territory to the municipality the City Council acts in a governmental and legislative

capacity and its discretion is not to be controlled except as it is restrained by constitutional and statutory provisions. The power of the Knoxville City Council to annex was delegated legally by the Legislature of Tennessee.''

The Trial Court very properly continued to say in its opinion:

''The court does not substitute its own judgment or discretion for that of the City Council as to the advisability, the desirability, the wisdom, the conformity to public policy, or the necessity of annexation of what would be best for the citizens or communities affected under the circumstances. It is not the province of the court to say what territory should or should not be annexed; or how much or how little territory should be added to the municipality. Determination of all such matters rest within the sound legislative discretion of the City Council.

''The sole duty of the court is to examine the annexation as actually enacted. The power given to the court is to decide whether the legislative declaration by the City, is so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of its legislative power. The function of the court is to determine, in the light of these principles, whether the exercise of the legislative powers has been arbitrary and clearly unreasonable. Only to this extent do our courts consider the reasonableness of an annexation. The Courts consideration of reasonableness is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question at least a fairly debatable one and if there is such, then the discretion

of the legislative body, that is, the City Council, is conclusive.''

The Trial Court further sets out that ninety-seven (97) witnesses appeared for or against these ordinances, some of them saying ''they have all the urban services they need and, as a matter of fact, could do without anything the City has to offer. As opposed to this, there are others who say that the fringe areas are insufficient as economic units and without the aid of the City they could not exist.'' Some witnesses say no health problems exists in the areas sought to be annexed, and there are others who say there is a real need for sewers; that the septic tanks now in use are only a temporary means of disposing of sewage and unless sewers are extended within the future a health problem will be presented. Some witnesses stated that annexation will depreciate property value and destroy the sale thereof. To the contrary is the view of other witnesses that within a reasonable time annexation will encourage sales and uphold values.

The Trial Court in finally disposing of all of these cases said in referring to the testimony of witnesses:

''These and numerous other controversial and debatable matters growing out of the annexations have been presented in the evidence. The persons who say these things, pro and con, for or against annexation, have not shown themselves to the court to be unreasonable persons. They are some of the best citizens of the whole community. They appear to be sincere while expressing their convictions and beliefs. It may be properly assumed they are truly reasonable persons.''

"The evidence in these consolidated causes discloses and the court so finds that the prosperity of both the City of Knoxville and of the several territories sought to be annexed will be materially retarded and the safety and welfare of the inhabitants and property of said municipality and territories will be endangered unless City Ordinances Nos. 3049, 3050, 3052, 3053 providing for the annexation of the territories contiguous to the municipality, described therein, are adopted.

"From the evidence it further appears and the Court so finds that there was no illegal, arbitrary, capricious or oppressive action on the part of City Council in the enactment of the aforesaid ordinances which are not unreasonable in consideration of the health, safety and welfare of the citizens and property owners both of the municipality and the territories sought to be annexed."

There has been a full, complete and lengthy trial. Many witnesses, approximately ninety-seven (97), have appeared for or against the ordinances. Testimony contained in fourteen (14) volumes and consisting of more than 2700 pages has been filed in this Court in these consolidated cases and examined by us.

A motion has been made to strike the bill of exceptions containing this testimony alleging that it was not filed within the time required. Another motion has been filed to require the clerk of the Circuit Court to make certain additions to the record; and still another motion has been filed to require the clerk to supply other information. We are satisfied that all motions should be, and they are hereby overruled.

For the reasons hereinbefore set forth, we are firmly and finally of the opinion that these appeals should be

dismissed. It results, therefore, that all assignments of error of all parties, having been very carefully considered, are overruled and the actions of the Trial Court in these consolidated cases are in all things affirmed. However, the case of *West Knox Utility District of Knox County, Tennessee v. City of Knoxville* is remanded for such further or other proceedings as may be necessary in the premises to bring to a just end the matters in controversy which were postponed or held in abeyance by order of the Court until the determination of the appeals herein.

BURNETT, JUSTICE, not participating herein.