**STATE of Tennessee ex rel. Lucius P. HUDSON et al., Appellants,**

**v.**

**CITY OF CHATTANOOGA et al., Appellees.**

Supreme Court of Tennessee.

July 29, 1974.

Schoolfield & Taylor, Shattuck & Payne, Chattanooga, for appellants.

Eugene N. Collins, Randall L. Nelson, Chattanooga, for appellees.

## OPINION

CHATTIN, Justice.

This appeal is from an adverse decree of the Chancellor upholding the validity of three ordinances enacted for the purpose of annexing certain areas of Hamilton County to the City of Chattanooga.

The suit was filed by Lucius P. Hudson and other residents and citizens of the affected areas under the authority of T.C.A. Section 6–310 seeking to have the annexation proceedings declared unreasonable and unnecessary for the welfare of the residents and property owners of the affected areas as well as the residents and property owners of the City of Chattanooga.

Relators, appellants, demanded a jury to try the cause.

Appellees filed an answer in which they denied the annexation of the areas is not

reasonable or necessary for the welfare of the residents and property owners of the affected areas and the residents and citizens of the City.

Appellees filed depositions, affidavits and exhibits in support of their answer.

Appellants filed a motion for summary judgment that questioned the proposed plans of services which was denied. The Chancellor likewise denied appellants' demand for a jury.

Appellants offered the testimony of a number of witnesses in their behalf, after which appellees moved the Chancellor to sustain the annexation ordinances. The Chancellor granted the motion and dismissed appellants' suit.

Appellants perfected this appeal and have assigned four alleged errors on the part of the Chancellor.

■ Appellants first insist the Chancellor erred in overruling appellants' motion for summary judgment based on the City's proposed plans of services.

In support of this assignment, appellants insist that, although the City did submit plans of services under the Annexation Act of 1971 using the variable tax structure, the Act authorizing a variable tax was held unconstitutional and, therefore, the plan is void. We disagree.

T.C.A. Section 6–309 sets forth two requirements to be met by the City in annexing adjacent areas. It must adopt a plan setting forth at a minimum the identification and projected timing of municipal services proposed to be extended into the area.

Secondly, the plan must be submitted to the local planning commission for study and written comment.

The record shows there were three resolutions adopted by the City Commission, which set forth and identify the specific services to be rendered to the areas and project the time of furnishing the services to each area. The resolutions were adopted on January 25, 1972.

The record further shows, and appellants admit, that the plans of services were submitted to the planning commission. The record, also, shows the planning commission studied the plans and approved them as being adequate on December 13, 1971. The record shows the annexation ordinances were passed on final reading on February 2, 1972.

Thus, the record is clear the City complied with the requirements of T.C.A. Section 6–309.

However, appellants insist the resolutions submitting the plans of services are void because they provide in the event the Variable Tax Act is held to be unconstitutional, the City shall request its engineering consultant to prepare the plan of services under the Act of 1961 which has not been done.

To the contrary, the record shows each resolution adopted by the commission on January 25, 1972, states:

"That if Chapter 420, Public Act of 1971 should be declared invalid, or otherwise not applicable so that separate ad valorem taxes may not be levied and collected for services actually rendered said territory, then all services will be rendered to the territory as soon as practical, immediately in some instances, but not later than the plan of services set out hereinabove."

Thus, the resolutions adopted the plan of services and maintain and project timing of the services to be extended whether the Act of 1971 was declared unconstitutional or not.

Furthermore, the Act of 1971 did not directly deal with plans of services. The constitutionality of the Act is immaterial to the issue of whether there was a compliance with T.C.A. Section 6–309 insofar as the plans of services were legally adopted.

Finally, the plans of services are based not upon the financial ability to provide same, but rather upon the physical ability to provide them within the projected time.

We think T.C.A. Section 6–309 was complied with and overrule the assignment.

■ Next, appellants insist T.C.A. Sections 6–309 and 6–310 and appellees' action thereunder violated the Fifth and Fourteenth Amendments and Article IV, Section 4 of the Federal Constitution, and Article 1, Sections 2, 8 and 21, and Article 2, Sections 27 through 29, and Article 11, Section 8 of the Constitution of Tennessee. We overrule the assignment.

"It is clear . . . that Hunter precludes constitutional challenge under the Fourteenth Amendment to annexations by municipal corporations of adjoining territory on the basis of the procedure employed or authorized by the state or because of the pecuniary repercussions in the form of the ordinary incidents of city taxation." Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321, cert. denied 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967).

In the case of State ex rel. Balsinger v. Town of Madisonville, 222 Tenn. 272, 435 S.W.2d 803 (1968), this Court said:

"As to the contention the ordinance conflicts with certain provisions of our state and federal constitutions, this Court, in the case of Williams v. Nashville, 89 Tenn. 487, 15 S.W. 364 (1891), said: 'It is contended that this act is void because in conflict with the fifth amendment of the constitution of the United States, which provides that: 'No person shall be . . . deprived of life, liberty, or property without due process of law, nor shall private property be taken for public use without just compensation;' and also because of in conflict with similar provisions of the constitution of the State of Tennessee, 'that no man shall be deprived of his life, liberty, or property but by the judg-

ment of his peers or the law of the land.' (Article 1, Section 8); and 'that no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor.' " Article I, § 21.

" 'As a matter of course, the act would be inoperative, null, and void, if, in fact, it violated any of those provisions. But it cannot be that it does so. The extension of corporate limits so as to include additional territory is in no sense an impairment of the owner's liberty, nor is it a taking of private property for public use. If it were held to be so, then no municipal corporation could be established or enlarged, and none of these valuable instrumentalities of the State would have a lawful existence.

" 'Even the statutes of annexation to which complainants ascribe the sanctity of general laws, would be utterly unavailable for the same reason.

" 'Placing property within the corporate limits of a given town or city, where it will be subjected to the additional burden of municipal taxation and supervision, is not a taking of the property at all.' "

Again, in the case of Stall v. City of Knoxville, 211 Tenn. 271, 364 S.W.2d 898 (1962), this Court said:

"Relators cite as error the action of the Trial Judge in sustaining demurrers to their attacks on the constitutionality, under both the State and Federal constitutions, of the ordinances and statutes under which they were passed. We think the action of the Trial Court was proper in this regard. The constitutionality of the statute was upheld in Witt v. McCanless, 200 Tenn. 360, 292 S.W.2d 392, and again in Morton v. Johnson City, 206 Tenn. 411, 333 S.W.2d 924, and was considered established in Knoxville v. State ex rel. Graves, 207 Tenn. 558,

341 S.W.2d 718. These cases established the constitutionality of the statute in question and, therefore, if these ordinances under attack meet the requirements of the statutes, they are valid and constitutional."

However, appellants call our attention to Chapter 753 of the Public Acts of 1974, enacted March 28, 1974, which amends T.C.A. Section 6–310 by providing:

"The municipality shall have the burden of proof that an annexation ordinance is reasonable for the overall well-being of the communities involved."

However, Counsel evidently overlooked Section 6 of the Act which reads:

"Nothing contained in this Act shall affect annexation proceedings initiated prior to the effective date of this Act."

The record is clear these proceedings were initiated prior to the effective date of the amendment which was April 5, 1974.

■ Appellants further insist the annexation statutes violate due process because they do not require a prior hearing.

To the contrary, T.C.A. Section 6–309, by its first paragraph, requires a prior hearing.

Moreover, any aggrieved property owner may file an action within thirty days to contest the proposed annexation which action suspends the annexation until the final outcome of the suit. Thus, the property owners are given the right to a prior hearing before the annexation can become effective.

Appellants contend T.C.A. Section 6–310 has "developed a double standard," that is, the Section provides "one standard for individuals living within an industrial area and another standard for persons living in areas not industrial." They insist this provision of the Section runs afoul of the equal protection guarantee as well as to Article 11, Section 8 of the Constitution of this State. We disagree.

■ Where classifications are reasonable they are constitutional.

■ "It is well-settled that constitutional provisions against class legislation apply only when statutory classification bears no reasonable or natural relation to the object sought to be accomplished. . . .

It is further settled that classifications made by the legislature are reviewable by the court only where there is a showing that the classification is palpably arbitrary . . . and that if the reasonableness of the classification is fairly debatable it must be upheld." City of Chattanooga v. Harris, 223 Tenn. 51, 442 S.W.2d 602 (1969).

■ The paragraph of T.C.A. Section 6–310 under attack by the above insistence of creating a double standard reads as follows:

"Should the territory hereafter sought to be annexed be the site of substantial industrial plant development, a fact to be ascertained by the court, the municipality shall have the burden of proving that the annexation of the site of the industrial plant development is not unreasonable in consideration of the factors above mentioned, including the necessity for, or use of municipal services by the industrial plant or plants, and the present ability and intent of the municipality to benefit the said industrial plant development by rendering municipal services thereto when and as needed. The policy and purpose of this provision is to prevent annexation of industrial plants for the sole purpose of increasing municipal revenue, without the ability and intent to benefit the area annexed by rendering municipal services, when and as needed, and when such services are not used or required by the industrial plants."

It is not unreasonable to require a municipality to show the annexation of an industrial plant is not for the sole purpose of increasing municipal revenue.

Corporations can and do furnish some of their own services such as police and fire protection; whereas, individual residents do not have such means.

Likewise, corporations do not need schools which individual citizens do.

For the above reasons the classification is reasonable.

As to appellants' insistence they were entitled to a jury trial, this Court has said, in the case of Balsinger v. Town of Madisonville, supra:

"The constitutional guaranty of trial by jury refers to common law actions and not to suits of an equitable nature."

■ Where the question of whether the ordinance is reasonable or unreasonable is a fairly debatable question it is not a question for the jury. Morton v. Johnson City, 206 Tenn. 411, 333 S.W.2d 924 (1960).

The Chancellor found and we agree the question was a fairly debatable one under the evidence.

■ Appellants' third assignment of error contends: "The court erred in excluding certain evidence concerning the probability that children in the affected area would come under the busing order of the United States District Court as it pertains to the City of Chattanooga.

The record shows that approximately eighty per cent of the students in the areas sought to be annexed were being transported by bus to schools they attend. Thus, it is not relevant whether they would be bused in the City system or not. We overrule the assignment.

Appellants, by their fourth assignment of error, contend the trial judge erred in granting appellees' motion to sustain the annexation ordinances, and dismiss appellants' suit.

■ Although the only evidence introduced at the trial was that of witnesses introduced by appellants, the evidence is con-

flicting as to the reasonableness or unreasonableness of the proposed annexation.

This being true, we must apply the rule where the question of reasonableness or unreasonableness of the ordinance is a fairly debatable one, then the discretion of the legislative body of the City is conclusive.

It results, all assignments of error are overruled and the judgment of the trial court is affirmed. Appellants will pay the cost.

DYER, C. J., McCANLESS and FONES, JJ., and LEECH, Special Justice, concur.