IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 18, 2002 Session

## RHEA COUNTY, TENNESSEE, ET AL. v. THE TOWN OF GRAYSVILLE, TENNESSEE

**Appeal from the Chancery Court for Rhea County**
**No. 9208    Frank V. Williams, III, Chancellor**

**FILED JULY 25, 2002**

**No. E2001-02313-COA-R3-CV**

In this appeal we are called upon to determine whether the Trial Court erred in its finding that the Appellee Town of Graysville's validly annexed certain territory within the boundaries of Appellant Rhea County. We affirm the judgment of the Trial Court.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Gary Neil Fritts, Dayton, Tennessee, for the Appellant, Rhea County, Tennessee

Carol Barron, Dayton, Tennessee, for the Appellee, The Town of Graysville, Tennessee

Ruth Ann Wilson, Intervening Petitioner, *Pro Se*

**OPINION**

This case arises out of a complaint filed in the Chancery Court of Rhea County by the Appellant/Plaintiff, Rhea County, contesting the annexation of certain territory in Rhea County by the Appellee/Defendant, the Town of Graysville.

On January 20, 1999, the Town of Graysville published notice of a "special called meeting and public hearing" to be held on January 27, 1999, for the first reading of an ordinance to annex territory located in Rhea County. On January 27, 1999, the ordinance was read, submitted to the Board of Commissioners of Graysville and passed. Thereafter, Graysville published another notice of a meeting and public hearing to be held on February 15, 1999, for the second reading of the

ordinance; however, the meeting was rescheduled to February 22, 1999. Notice of the rescheduled meeting was published on February 21, 1999.

Subsequent to the initial meeting on January 27, 1999, certain errors in the description of the property to be annexed were discovered and corrected. The February 22, 1999, meeting was held as rescheduled and the ordinance was read and passed as corrected.

Upon being petitioned by a majority of persons owning property within the area of annexation, the County filed a complaint on May 25, 1999, in the Chancery Court for Rhea County contesting the annexation. On June 16, 1999, the complaint was amended to include a request for declaratory judgment. In its complaint as amended the County asserted the following:

1) "That the First Reading of the Proposed Ordinance and the Second Reading of the Proposed Ordinance described two separate territories."

2) "That the annexation by the Town of Graysville of the ... described territory is unreasonable for the overall well-being of the communities involved: furthermore, the health, safety, and welfare of the citizens and property owners of the municipality and the annexed territory will not be materially retarded in the absence of such annexation."

3) "The plan of services proposed by the Town of Graysville do not meet the statutory plan of services requirements."

4) "That the Town of Graysville did not have two readings of Ordinance 1999-1 as passed or required by the Charter for the Town of Graysville, Tennessee, Section 21."

5) "That the Town of Graysville did not give Seven (7) days notice by publication before each hearing as required by T.C.A. 6-51-101"

6) "That the Ordinance 1999-1 was not executed by the Mayor until after this suit was filed and after June 7, 1999. That final passage of the Ordinance would be the date the Mayor of the Town of Graysville executed the Ordinance in his official capacity"

7) "That Ordinance 1999-1 was not sufficiently published with a caption "An Ordinance to annex certain territory and to incorporate the same within the Corporate Boundaries of the Town of Graysville, Tennessee as required by law."

Graysville filed a motion to dismiss the County's complaint on grounds that it was time barred under T.C.A. 6-58-108 (b) (3) which applies to counties such as Rhea County which have not adopted a growth plan. Under that statute the County contesting annexation is required to file suit within 90 days of the final passage of the contested annexation ordinance. Graysville contends that the contested ordinance received final passage after the second reading on February 22, 1999, and that the County's complaint was not filed until over ninety days later on May 25, 1999. However,

the Trial Court determined that allegations of the County relative to its request for a declaratory judgment raised the question of whether there was, in fact, final passage of the ordinance. Specifically, the Court found that a determination had to be made as to whether there was adequate public notice of the second meeting of February 22, 1999, and whether the change in description of the area of annexation between the initial meeting of January 27, 1999, and the meeting on February 22, 1999, actually created a new proposal requiring a new first reading and public hearing with seven days notice. The Court further found that determination had to be made as to whether the change in description corrected the ordinance as read on January 27, 1999, so that it described property adjoining the boundaries of Graysville in compliance with T.C.A. 6-51-102(a)(1) which only allows a municipality to annex *adjoining* territory.

The case was tried without a jury on April 3, 2000, and on April 24, 2001, the Court entered an order decreeing "[t]hat all procedural issues[1] raised by the Plaintiffs are found in favor of the Defendant, Town of Graysville, except that the Defendant, Town of Graysville, has failed to establish contiguous boundaries to the proposed property to be annexed as required by law such that the ordinance to annex certain property within the Town of Graysville is defective and declared invalid." Thereafter, however, upon Graysville's motion to alter or amend the judgment, the Trial Court conducted a further hearing and entered a final decree finding upon clarification that Graysville had met the statutory requirement that the boundaries of the annexed property be contiguous with the boundaries of the Town. The Court further found that final passage of the ordinance took place on February 22, 1999, and declared the ordinance valid and effective as of May 23, 1999. This appeal followed.

The County raises the following issues for our review which we restate:

1) Did the reading of the ordinance on January 27, 1999, constitute a valid first reading where the territory described in that reading was not territory adjoining the existing boundaries of Graysville?

2) Did the reading of the ordinance on February 22, 1999, actually constitute a valid second reading where the Board of Commissioners of Graysville had previously approved the reading of January 27, 1999, in their minutes of February 1, 1999, and the property description as read on February 22 was different from the property description as read on January 27, 1999?

3) Was more than one day's notice required for the second reading of the ordinance?

4) Was the ordinance effective absent the signature of the mayor of Graysville?

---

[1] The County conceded at trial that issues raised regarding reasonableness of the annexation were premature pending the Court's determinations regarding the procedural issues raised and that, if the ordinance was found to be procedurally valid issues of reasonableness would be time barred under T.C.A. 6-58-108.

5) Was a plan of services required of Graysville before adoption of the ordinance and did the ordinance become operative prior to finalizing a plan of services for the area of proposed annexation?

Pursuant to T.R.A.P. 13(d), we review a non-jury case such as this one *de novo* upon the record of the trial court. We presume that the trial court's findings of fact are correct and, unless evidence on the record preponderates to the contrary, we must affirm those findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993). There is no presumption of correctness with respect to a trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996).

The first issue we address is whether the reading of the ordinance on January 27, 1999, constituted a valid first reading in light of the fact that the territory as described at that reading was not territory adjoining the existing boundaries of the Town of Graysville.

T.C.A. 6-51-102(a)(1) provides that a municipality may, by ordinance, "extend its corporate limits by annexation of such territory *adjoining* its existing boundaries ..." (italics added).

The decree entered by the Trial Court on August 17, 2001, finds that a parcel of land designated parcel 91.03 was annexed into the boundaries of Graysville in 1994. It appears from the record that the boundary of parcel 91.03 constitutes the boundary of Graysville that is closest to the area of proposed annexation. Parcel 91.03 is bordered by and conjoined with the area to be annexed by a county road designated Hickman Lane. The ordinance as read on January 27, 1999, erroneously omitted Hickman Lane from the description of the property to be annexed  Absent the inclusion of Hickman Lane, the area of proposed annexation did not adjoin the boundaries of Graysville as is required before there can be annexation under T.C.A. 6-51-102(a)(1).

While it is true that the description as read on January 27, 1999, was deficient in that it failed to include Hickman Lane, we do not agree that Graysville consequently failed to comply with the requirements of T.C.A. 6-51-102(a)(1). T.C.A. 6-51-102(a)(1) limits the authority of a municipality with respect to what property it may annex; however, annexation is not effective before final passage. The property description in the ordinance as finally passed on February 22, 1999, did include Hickman Lane and, accordingly, when the property was annexed the 'adjoining property' prerequisite under the statute had been met.

 T.C.A. 6-51-102(a)(1) does not address the question of what description of property is sufficient to satisfy the requirement of a valid first reading. In answering that question we are guided by the case of *City of Johnson City v. State, ex rel. John Maden*, 304 S.W.2d 317 (Tenn. 1957) wherein the Tennessee Supreme Court recognized that the purpose of the description of the property which the municipality intends to annex "is to give the people who live in the territory which is to be annexed notice of the intention of the City to include them within the corporate boundaries." It appears to us that the proposed area of annexation in the instant case was sufficiently described in the reading on January 27, 1999, to apprise property owners within that area of Graysville's intent

to include them within its boundaries. Accordingly, despite the omission of Hickman Lane from the description read on January 27, 1999, we find that that reading was sufficient to constitute a valid first reading.

The next issue presented by the County is whether the reading of the ordinance which took place on February 22, 1999, was actually a *second* reading as is required under Section 21 of the Town of Graysville's charter which provides that "[e]ach ordinance, before being adopted, shall be read at two (2) meetings not less than seven (7) days apart". The County argues that the February 22 reading was actually a *first* reading of what was, in effect, a new ordinance. In support of this argument the County contends that changes were made in the description of the proposed area of annexation subsequent to the reading on January 27, 1999; however, the minutes of January 27 were adopted without change by the Graysville Board of Commissioners on February 1, 1999, and the ordinance was never properly amended to reflect the changes. Therefore, the County contends that the ordinance read on January 27, 1999, and the ordinance read on February 22, 1999, are, in fact, two separate ordinances, neither of which has been read twice as required by Graysville's charter. We disagree.

In addition to the inclusion of Hickman Lane, the following changes were made to the ordinance between the reading on January 27, 1999, and the reading on February 22, 1999:

1) The reference point for the beginning of the description of the area of proposed annexation was changed from the centerline of Old Graysville Road, which lies adjacent to the northwestern corner of the area of annexation, to the nearby northeastern corner of parcel 90 within the right of way of Hickman Lane.

2) The erroneous description of one piece of property within the area of annexation as "parcel 30 Rhea County Tax Map 102" was changed to "parcel 30 Rhea County Tax Map 103".

3) The boundary of the area of annexation at the Old Graysville Road was changed to run with the eastern edge of the right of way of the road rather than the center line.

In the case of *Hourglass Lounge, Inc. v. City of Johnson City*, 879 S.W.2d 860 (Tn. Ct. App. 1994) we recognized that amendments can be made to a proposed ordinance at any time before enactment of the ordinance upon a final reading as long as such amendments do not "materially or substantially change the purpose and scope of the proposed ordinance". At page 862 of that case we adopted the following language set forth in *Biltmore Hotel Court, Inc. v. City of Berry Hill*, 390 S.W.2d 223 (1965):

> What constitutes a material or substantial change in an ordinance between the date of its first and final enactment is dependent upon the circumstances of each case. If nothing new is added to it, or if what is taken from it does not render it misleading in its fundamental content when passed, such alteration will not be so

material or substantial as to characterize the ordinance in its final form a different instrument from that introduced.

Based upon the circumstances in the present case it is our determination that the changes made to the ordinance between the reading on January 27, 1999, and the reading on February 22, 1999, were neither material nor substantial.  We find, as did the Trial Court, that the change of the map number from '102' to '103' was nothing more than the correction of a clerical error.  The other changes in the description merely altered the relationship of the boundaries of the annexed area with respect to public roads and did not result in any additional taxable property.  No additional residences or businesses were included in the area of annexation as a result of the changes and no additional property owners were thereby affected.

The County cites the case of *State of Tennessee ex rel, Howard Wood and Flora Mae Wood, vs. City of Memphis*, 510 S.W.2d 889 (Tenn.1974) to support its contention that proper amendment of an ordinance requires that the annexing authority show the amendments in its minutes and approve same prior to the next reading of the ordinance. In that case the appellant argued that an annexation ordinance was improperly passed by the City of Memphis because of a variance between the description of an area to be annexed as found in the third reading of the ordinance of annexation and the final description.  The Court found that the appellant's argument was without merit " because it is clear from the record that the ordinance which was passed on July 18, 1972 was amended on July 25, 1972 merely to correct a clerical error in the description of the subject property.  *This correction was made before the Minutes of the July 18th meeting were approved and thus the final ordinance was lawfully enacted.*"(italics added).

It is apparent from our review of *Wood* that the only portion of that case which is conceivably supportive of the County's contention regarding the proper procedure for the amendment of an ordinance is the italicized language cited above.  However, it is our finding that the statement of the Court is nothing more than a recital of the circumstances of the case.  Such statement neither recognizes nor  establishes a rule of law with respect to the requisite procedure for amendment of an ordinance and the County's argument in this respect is without merit.  The only requirement for amendment under that portion of the city charter of the Town of Graysville submitted as evidence in the case now before us provides that "[a]mendments of ordinances may be made prior to final reading and shall be accomplished only by setting forth the complete section, sections, subsection or subsections in their amended form."  The Trial Court found that Graysville amended the ordinance in compliance with its charter and we have not been presented with evidence which preponderates to the contrary.

The next issue which we address is whether Graysville provided adequate notice of the second reading of the ordinance.

T.C.A. 6-51-102(a)(1) states:

(a)(1) A municipality, when petitioned by a majority of the residents and property owners of the affected territory, or upon its own initiative when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered, *after notice* and public hearing, by ordinance, may extend its corporate limits by annexation...(italics added)

T.C.A. 6-51-101(3) defines "notice" as follows:

(3) "Notice" means publication in a newspaper of general circulation in the municipality at least seven (7) days in advance of a hearing. The notice, whether by ordinance as stipulated in § 6-51-102(a)(1) and (b) or by referendum as stipulated in § 6-51-104(b), shall be satisfied by inclusion of a map which includes a general delineation of the area or areas to be annexed by use of official road names and/or numbers, names of lakes and waterways, or other identifiable landmarks, as appropriate.

Section 21 of the Graysville town charter provides in pertinent part:

Each ordinance, before being adopted, shall be read at two (2) meetings not less than seven (7) days apart, and shall take effect immediately, provided a caption of the ordinance, excepting emergency ordinances, has been published in a local newspaper of general circulation or unless otherwise specified.

The County contends that Graysville failed to comply with T.C.A. 6-51-101(3) and 6-51-102(a)(1) because the notice of the second reading was published less than seven days before the reading and did not include a legal description or map of the proposed area of annexation. The County further contends that Graysville "did not give a caption about any amended ordinance or description of the area to be annexed" and was required to do so under its charter.

The record shows that on January 20, 1999, Graysville published notice of a "special called meeting & public hearing" to be held on January 27, 1999, for the purpose of the first reading of the ordinance of annexation. This notice was published in the Herald News and included a map of the proposed area of annexation. We further note that the ordinance as it appears in the record is captioned "AN ORDINANCE TO ANNEX CERTAIN TERRITORY AND TO INCORPORATE THE SAME WITHIN THE CORPORATE BOUNDARIES OF THE TOWN OF GRAYSVILLE, TENNESSEE". This caption was recited verbatim in the body of the notice as published on January 20, 1999. Based on this evidence we conclude that the notice requirements set forth in T.C.A. 6-51-101(3), 6-51-102(a)(2) and Section 21 of the Graysville town charter were complied with in the notice which was published on January 20, 1999.

The County contends that the notice requirements under T.C.A. 6-51-101(3) and 6-51-102(a)(2) and Section 21 of the town charter were also applicable to the notice of the second meeting

of February 22, 1999, which notice was published on February 21, 1999. With respect to the requirement under the charter regarding publication of the caption of the ordinance we find that the notice of February 21, 1999, sets forth the caption as it appeared in the notice of January 20, 1999, and as it appeared in the ordinance when it was read and approved on February 22, 1999. Therefore, we believe that the publication requirements of the charter were met in the notice of February 21, 1999, with regard to publication of the caption of the ordinance. It is our further determination that the initial publication of notice on January 20, 1999, was sufficient to satisfy the requirements under T.C.A. 6-51-101(3) and 6-51-102(a)(2). We do not find that the notice of the second meeting/hearing was subject to the same statutory requirements of seven days notice and inclusion of a legal description or map. Rather, it is our judgment that the notice requirements as to publication of the notice of the second meeting are those requirements set forth at Section 10 of the Graysvile town charter which provides that "[a]ll notices shall be personally delivered at least twenty-four (24) hours before the scheduled time of a special called meeting and at least four (4) hours notice before an emergency called meeting."

The County presents no argument that the notice published on February 21, 1999, failed to satisfy the notice requirements under Section 10 of the town charter and we do not find that the evidence presented preponderates against the Trial Court's finding that such requirements were satisfied.

The last two issues presented for our review are as follows: 1) whether the ordinance was effective absent the signature of the mayor of Graysville and 2) whether a plan of services was required for the area of proposed annexation before adoption of the ordinance and whether the ordinance became operative prior to finalization of a plan of services.

Although the County raised these issues in its brief it cites no authority for the proposition that the Trial Court erred with respect to these issues and; therefore, we are compelled to consider these issues waived. As recognized by the Court in *State v. Brown*, 795 S.W.2d 689 (Tenn.Cr.App. 1990) at page 698:

> Failure of a defendant to cite authority for propositions in his argument on appeal constitutes waiver of the issue. *State v. Houston*, 688 S.W.2d 838 (Tenn. Crim.App. 1984); *Moorman v. State*, 577 S.W.2d 473 (Tenn.Crim.App. 1978). The brief of the appellant should contain an argument setting forth the contentions of the appellant with respect to the issues presented with citations to the authorities and appropriate references to the record.

As a final matter we address the brief of intervening petitioner, Ruth Ann Wilson, a property owner within the area of annexation. Ms. Wilson states that the first purpose of her intervention "is to demonstrate for posterity's record the ancient property rights of the American citizen under the United States Constitution and the Constitution of the State of Tennessee, in light of the recent abandonment and vast deletion of details pertaining to the causes and certifications verified from the beginning of the nation by a decisive American Revolution and the blood and sacrifice of our

American veterans, which sacrifices were primarily and foremost for property rights." Ms. Wilson states that the second purpose of her intervention "is to show the Court and affected parties that Intervening Plaintiff, hereafter called Intervenor, has noble purposes and intents in resisting annexation and T.C.A. 1101, 'Urban Growth Plan', and the above-styled case which involved her was in no way to be construed as using the taxpayer's money to furnish her with defense.".

Ms. Wilson does not contend that the Trial Court erred either in its findings of fact or in its conclusions of law and offers no reference to the record or citation to authorities which would support such a contention. Recognizing Ms. Wilson's reference to the United States Constitution and the Constitution of Tennessee, we would point out that the Supreme Court of this State has heretofore held that the annexation of territory, as was effected by Graysville in this case, is not violative of the constitutional guarantees of due process under either the Federal Constitution or the Tennessee Constitution. *Hudson v. City of Chattanooga*, 512 S.W.2d 555 (Tenn. 1974).

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for such further proceedings, if any, as may be necessary and for collection of costs below. Costs of appeal are adjudged against Rhea County and its surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE