No. 83–6832. EDDMONDS *v.* ILLINOIS. Sup. Ct. Ill. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

I would grant certiorari to consider the constitutionality of the Illinois death penalty statute, which vests in the prosecutor the unlimited and unguided discretion to trigger death sentencing proceedings. Under the statute, a death sentencing proceeding will follow a conviction for a crime punishable by death *only* "[w]here requested by the State." Ill. Rev. Stat., ch. 38, ¶ 9.1(d) (Supp. 1984). If the prosecutor chooses not to request such a proceeding, the defendant cannot be sentenced to death.

Yet the prosecutor's decision whether to make this request is not guided by any legislative standard. Thus, the Illinois scheme introduces unbridled discretion at a stage at which "discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U. S. 153, 189 (1976) (joint opinion announcing the judgment of the Court). Accordingly, a substantial question is presented as to the constitutionality of the statute.

I

At the outset, it is important to state clearly what this case is *not* about. It is not about prosecutorial discretion in an area traditionally committed to such discretion. The discretion at issue here is fundamentally different from the discretion a prosecutor exercises in determining whether to seek an indictment for an offense punishable by death, or to accept a plea of guilty to a lesser included offense. What is at stake, instead, is standardless discretion at the *postconviction* phase of capital cases—the phase in which this Court has repeatedly emphasized that discretion must be carefully guided.

The joint opinion announcing the Court's judgment in *Gregg v. Georgia*, *supra*, carefully distinguishes preconviction discretion—which it deems permissible—from postconviction discretion—which, it states, can render a scheme unconstitutional. That opinion makes clear that unguided discretion at the latter stage is impermissible: "[T]he decision to impose the death sentence on a specific individual who ha[s] been convicted of a capital offense" must be guided by standards and cannot be imposed on a "capriciously selected group of offenders." *Id.*, at 199 (Stewart, POWELL, and STEVENS, JJ.).

## II

In my mind, there are serious questions about the constitutionality of a scheme that gives the prosecutor the unbridled discretion to select, from the group of individuals convicted of an offense punishable by death, the subgroup that will be considered for death. The Court has focused its concern in death penalty cases on the decision of which defendants, among the many convicted of offenses punishable by death, will actually receive the death penalty. See, *e. g.*, *Pulley* v. *Harris*, 465 U. S. 37, 44 (1984); *Lockett* v. *Ohio*, 438 U. S. 586, 600–601 (1978). It is at this stage—in which the focus of the proceedings shifts from the nature of the crime to the nature of the defendant—that arbitrariness, discrimination, and irrationality are most likely to infect the decision whether a defendant will live or die. To minimize the potential for these abuses, the Court has consistently required that, following conviction of an offense punishable by death, discretion in determining who will receive the death penalty be limited by statutory standards.

The Illinois scheme differs from schemes this Court has approved in that capital sentencing proceedings in Illinois do not inexorably follow conviction for a crime punishable by death. Instead, the prosecutor has the authority—and the duty—to narrow down the class of convicted defendants. Yet the Illinois statute does not set any standards to guide that decision. Such unguided discretion cannot help but produce the sort of arbitrary, capricious, and discriminatory application of the death penalty that is simply intolerable under *Furman* v. *Georgia,* 408 U. S. 238 (1972). Because the prosecutor has no standards to guide his postconviction decision, the Illinois scheme eliminates any "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." *Id.,* at 313 (WHITE, J., concurring).

The potential for arbitrariness in the imposition of the death penalty is further exacerbated because the discretion to initiate sentencing proceedings is not vested in one individual, but in the State's Attorneys of each of the State's 102 counties. Each of these 102 individuals, subject to the different political pressures of his own constituency, can establish his own policy—or no policy at all—on how to narrow the group of individuals convicted of crimes punishable by death, and in this endeavor he is not aided by

any legislatively imposed standard or limited by any legislatively imposed constraint. *People ex rel. Carey* v. *Cousins*, 77 Ill. 2d 531, 557–558, 397 N. E. 2d 809, 822 (1979) (Ryan, J., dissenting); see *People* v. *Lewis*, 88 Ill. 2d 129, 192, 430 N. E. 2d 1346, 1376–1377 (1981) (Simon, J., dissenting). In such a system, there will often be no rational distinction between an individual who receives the death penalty and one who does not.

## III

The postconviction discretion that the Illinois statute vests in prosecutors is particularly pernicious because it is coupled with the absence of a clear requirement of comparative proportionality review of death sentences on appeal. The Illinois death penalty statute does not mandate such review, and the Illinois Supreme Court has been ambiguous about whether it would ever engage in analysis of this type. See *People* v. *Kubat*, 94 Ill. 2d 437, 502–504, 447 N. E. 2d 247, 277–278 (1983); *People* v. *Brownell*, 79 Ill. 2d 508, 541–544, 404 N. E. 2d 181, 198–199 (1980). Thus, the scheme does not at any stage assure that like cases in Illinois are treated alike, and provides no mechanism to protect against arbitrary, capricious, or discriminatory winnowing of defendants convicted of crimes punishable by death.

Central to the Court's decision in *Pulley* v. *Harris, supra*, that comparative proportionality review is not in all capital cases constitutionally required was the fact that the scheme provided adequate standards to guide the decision whether individuals convicted of first-degree murder should be sentenced to death. Given such standards, the Court did not see much potential for arbitrary and capricious action. *Id.*, at 53. But the Court did state clearly that comparative proportionality review is a safeguard, *id.*, at 50, and that it might be constitutionally required in a scheme that did not contain sufficient other adequate safeguards, *id.*, at 51.

Under the Illinois scheme, there are no standards to guide an important part of the decision as to which defendants, among those convicted of crimes punishable by death, are actually sentenced to death. Thus, even if prosecutors try to act responsibly—whatever this might mean under the scheme—consistency is unattainable because they have no standards to guide their actions. The safeguards identified in *Pulley* might adequately

protect the rationality of the death sentencing process once the prosecutor has initiated that process, but they in no way assure consistency across the spectrum of defendants who are convicted of offenses punishable by death. Thus, without comparative proportionality review, there is absolutely no guarantee that similarly situated defendants, charged and convicted for similar crimes, will not be treated differently. Irrationality and arbitrariness, even discrimination, are likely to be the norm.

## IV

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and the Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S., at 231 (MARSHALL, J., dissenting); *Furman* v. *Georgia*, *supra*, at 314 (MARSHALL, J., concurring). The issue in this case, however, is such that I would grant review of the sentence even if I accepted the prevailing view that the death penalty may be constitutionally imposed under certain circumstances. The Illinois death penalty statute vests in the prosecutor unbridled discretion at a stage in the proceedings at which the Court has consistently stated that discretion must be channelled to prevent the arbitrary, capricious, and discriminatory application of the death penalty. The consideration of the constitutionality of this statute is, I believe, worthy of the attention of this Court. For that reason, I respectfully dissent.