**STATE of Tennessee, Appellee,**

v.

**Richard N. COOLIDGE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 30, 1995.

Motion for Reconsideration Denied May 4, 1995.

Permission to Appeal Denied by Supreme Court Nov. 6, 1995.

---

3. The motion was subsequently reduced to writing and filed in the trial court.

David E. Brandon and Fred E. Cowden, Jr., Nashville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Charlette Reed Chambers, Counsel for the State, and William Reed, Asst. District Attorney General, Nashville, for Appellee.

*OPINION*

WADE, Judge.

The defendant, Richard N. Coolidge, was convicted of driving under the influence of an intoxicant. The trial court imposed a jail sentence of 11 months and 29 days, all but 20 days of which was suspended. Conditions of release require 100 hours of community service and treatment for alcohol abuse.

In this appeal, the defendant presents the following issues for review:

(1) whether the defendant's being held in jail for six hours after his arrest precluded further sentence on double jeopardy grounds;

(2) whether the Fourth Circuit Court of Davidson County had jurisdiction;

(3) whether evidence sought by the defendant from the district attorney general was properly excluded; and

(4) whether the sentence was excessive.

We find no error and affirm the judgment of the trial court.

On March 14, 1990, the defendant was arrested for driving under the influence of an intoxicant by officers from the Nashville–Davidson County Metropolitan Police Department. A blood-alcohol examination established that the defendant registered .18. Pursuant to policy, the defendant had to be held for six hours before being released on bail. At trial, the defendant sought to present evidence that two of the breathalizers within the police department, Nos. 1010 and 1029, were not properly calibrated between December of 1989 and April of 1990. The office of the district attorney had investigated allegations of impropriety and, by the time of this trial, had released a report. The defendant received a copy of the report and issued a subpoena for the district attorney general to appear as a witness. The evidence was not allowed and, at the conclusion of the trial, the jury returned a verdict of guilt. The trial court allowed the defendant approximately 8½ hours of jail credit towards a 20–day period of confinement.

I

The defendant's initial argument is that the six-hour holding period qualifies as punishment for the offense and, thus, any further sentence by the trial court after the determination of guilt is precluded by double jeopardy principles. *See* U.S. Const. amend. V, Tenn. Const. Art. I, § 10. The defendant relies primarily upon two United States Supreme Court cases which stand for the proposition that civil forfeiture proceedings, if punitive rather than remedial, may preclude subsequent criminal prosecution. *See Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). The rationale for the argument here is that if a civil forfeiture provision can be so punitive in nature as to bar subsequent criminal prosecution, then a post-arrest holding period, if also punitive in

nature, should bar subsequent criminal prosecution on the same grounds.

Certainly, both state and federal constitutional provisions protect against "the peril of both a second punishment and a second trial for the same offense." *Whitwell v. State,* 520 S.W.2d 338, 341 (Tenn.1975); *see State v. Smith,* 810 S.W.2d 155 (Tenn.Crim.App. 1991). The holding in *Doe v. Norris,* 751 S.W.2d 834, 839 (Tenn.1988), also provides some guidance:

> In determining whether the confinement involved ... is punishment ... [c]ourts must decide whether the confinement is imposed for the purpose of punishment or whether it is an incident of a legitimate governmental purpose. Where ... no showing of an express intent to punish is made ... "that determination ... turn[s] on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.' "

(Citation omitted).

Interestingly, there are very few reported cases on this particular subject. The issue appears to be one of first impression in this state. From those few sources available, it would appear that the determinative question is whether the pretrial detention period amounts to punishment. If so, a subsequent conviction violates double jeopardy safeguards; but if merely "remedial in nature," a conviction and sentence are not precluded.

■ Generally, punishment imposed without a prior adjudication of guilt is "per se illegitimate." *Schall v. Martin,* 467 U.S. 253, 272, 104 S.Ct. 2403, 2414, 81 L.Ed.2d 207 (1984). On the other hand, if the state action is remedial and not intended to inflict punishment as a means of vindicating public justice, the double jeopardy clause serves as no protection. *State v. Conley,* 639 S.W.2d 435 (Tenn.1982); *see Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). In *Conley,* for example, our supreme court held that prior convictions for driving under the influence of an intoxicant resulting in the suspension of license did not preclude a subsequent conviction under the Motor Vehicle Habitual Offender's Act to further bar the defendant from driving.

Unless the restriction is related to a legitimate goal, courts may infer that its purpose is punitive. Pretrial confinement in order to assure a defendant's presence at trial may be one legitimate purpose. But it is not exclusive. *See Campbell v. McGruder,* 580 F.2d 521, 529 (D.C.Cir.1978). In our view, detention for the purpose of detoxification may also qualify. *Cf. Jamestown v. Erdelt,* 513 N.W.2d 82 (N.D.1994); *City of Fargo v. Stutlien,* 505 N.W.2d 738 (N.D.1993). In *Erdelt,* the North Dakota Supreme Court held that a blanket policy of detaining those arrested for DUI for a period of eight hours, without making an individualized determination of whether the defendant presented a danger to himself or others was unlawful and required a dismissal of the charge:

> [A]fter the driver is arrested, tested, and posts bond, the officer's main concern is to ensure the person does not drive again until no longer under the influence. If the arrestee posts bond and goes with a responsible person, that danger is normally minimal. We construe [the statute] to require that, absent extraordinary circumstances, the person must be released on bond to go with a responsible adult.

513 N.W.2d at 85.

As indicated, the decision was based upon statutory construction rather than double jeopardy grounds. While the North Dakota decisions are helpful, the test in *Doe v. Norris* would appear to govern the issue presented in this case.

■ The initial burden is on the defendant to make a threshold showing of double jeopardy. *United States v. Sinito,* 723 F.2d 1250 (6th Cir.1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *United States v. Jabara,* 644 F.2d 574 (6th Cir.1981); *see Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708

(1990). In other words, the defendant must make an arguable showing that his pretrial detention qualified as punishment. That would depend on (1) whether the detention served an alternative purpose, and (2) whether that detention is excessive in relation to the purpose. Obviously, laws against drunk driving are designed to protect the public from alcohol impaired drivers. Whether the detention was precluded upon double jeopardy principles must be assessed on a case-by-case basis. Here, we have nothing other than the technical record by which to judge. There is no transcript of either the hearings on any pretrial motions or the trial of the case. We know little of the facts and circumstances because there was no statement of the evidence. And thus, the presumptive correctness of the ruling of the trial court on this constitutional issue must stand. *Smith v. State*, 584 S.W.2d 811, 812 (Tenn.Crim. App.1979).

## II

■ Next the defendant complains that the Fourth Circuit Court of Davidson County, created by Chapter Four of the Public Acts of 1957, had no jurisdiction over criminal cases:

> Section 2. Be it further enacted, That the said Fourth Circuit Court of Davidson County shall be held in the City of Nashville, and shall have concurrent jurisdiction with the Circuit Court of Davidson County, the Second Circuit Court of Davidson County, and the Third Circuit Court of Davidson County on all matters involving divorces, annulments, separate support and maintenance, custody of children, support of children, care of children, adoptions, actions brought under the Uniform Reciprocal Support Act, certiorari and/or appeals from the Juvenile Court, and any and all other types and kinds of actions, litigation and proceedings involving domestic matters and the relationship of husband and wife, and parent and child.

*Crews v. Overbey*, 645 S.W.2d 388, 392 (Tenn. 1983) (quoting 1957 Tenn.Pub.Acts 44).

The defense relies upon the limited jurisdictional grant. In response, the state relies

upon Tenn.Code Ann. § 40–1–108, a statute enacted in 1858 and amended in 1932:

> Original jurisdiction of circuit and criminal courts.—The circuit and criminal courts have original jurisdiction of all criminal matters not exclusively conferred by law on some other tribunal.

In *Crews*, our supreme court held that the Davidson County Fourth Circuit Court, created in 1957, "clearly does not have general jurisdiction of litigation involving fiduciaries and trust estates." *Crews v. Overbey*, 645 S.W.2d at 392.

■ The trial here, however, was not in the Fourth Circuit Court but, instead, in the Probate Court for Davidson County, a court established by a separate act. Those drafted orders, as opposed to those appearing on forms, bear the caption "In the Probate Court of Davidson County," Case No. SN–9958. An order dated May 6, 1992, from the Criminal Court of Davidson County, Division II, transferred the case to the Probate Court. The trial judge had the authority to preside over this case by interchange. The statute governing this procedure provides as follows:

> The circuit judges may interchange with each other or with judges of special courts for one (1) or more courts, or parts of courts, when causes exist making an interchange necessary, or for mutual convenience; and, in the absence of the judge of any circuit, the circuit judge's death, or inability to hold court, any circuit judge may hold court in such judge's stead.

Tenn.Code Ann. § 17–2–201.

■ Judges may interchange for personal convenience. They may also do so for a special case. *Dupuis v. Hand*, 814 S.W.2d 340 (Tenn.1991). Moreover, judges may interchange even without application to the chief justice of the supreme court. *State, ex rel. Stall v. City of Knoxville*, 211 Tenn. 271, 364 S.W.2d 898 (1962), *cert. denied*, 372 U.S. 914, 83 S.Ct. 728, 9 L.Ed.2d 721 (1963). This statute has been given broad interpretation and applies equally to special courts. *See Lieberman v. Knight*, 153 Tenn. 268, 283

S.W. 450 (1925); *Stuart v. State,* 60 Tenn. 178, 1 Baxt. 178 (1873). Similar statutes apply to chancellors, criminal court judges, and special judges. Tenn.Code Ann. §§ 17-2-203, -205, and -207.

Our research indicates that the Probate Court of Davidson County was established by the Private Acts of 1963. Since then, amendments to the act have been passed in 1974, 1982, and 1992. The 1982 amendment conferred jurisdiction in the Probate court concurrent with that of "the Circuit and Criminal Courts of Davidson County on all matters." 1982 Tenn.Priv.Acts 279.

From all of this, we must conclude that the Probate Court of Davidson County did have jurisdiction over this criminal matter and that the Circuit Judge of Davidson County held the authority to preside under our interchange statutes.

### III

■ Next the defendant claims that the trial court erred by refusing to allow the defendant to subpoena the district attorney general. The defendant apparently intended to question the district attorney general about a July 19, 1991, memorandum to local trial judges regarding the inaccuracies of "at least two of the police department's breath alcohol testing machines...." An internal investigation performed by a technician supervisor determined that two of the six machines used by police were "out of calibration," and had been registering blood alcohol content by about .07 or .08 percent too high.

In response, the state established that the defendant was tested on a PAC 1200 breathalizer, No. 1030. In a pretrial motion to exclude the evidence, the state established that the official report by the district attorney general did not relate to either the machine used to measure the defendant's blood-alcohol content or the operator who administered the test. By inference, the report would have been favorable to the state. The trial court ordered that the subpoena was not warranted. Implicit in the ruling is that the

testimony of the district attorney general, without a showing of something new, would not have been relevant to the issue raised by the defendant in this case. *See* Tenn.R.Evid. 401; *State v. Banks,* 564 S.W.2d 947 (Tenn. 1978).

A motion in limine is designed to determine issues, sometimes including those of an evidentiary nature, in advance of trial. *See* Tenn.R.Crim.P. 12(b). Here, the defendant was apparently unable to connect the two malfunctioning machines to his defense. While the report appears in the record, we can find nothing to establish its relevance to the guilt or innocence of this defendant. Thus, we find no error in the grant of the motion in limine.

### IV

■ As his last issue, the defendant claims that the sentence was excessive. The defendant specifically complains about the procedure implemented during the week of February 8, 1993, wherein all of the judicial resources of Davidson County were apparently dedicated to driving under the influence charges. The defendant claims that a court reporter had not been provided and, therefore, he was unable to obtain a verbatim transcript of the trial. The defendant cites a newspaper article in support of his assertion that inordinately severe sentences were imposed upon those tried and convicted in Davidson County during the week of his trial. He argues that there were no statutory enhancement factors and implies that the trial court imposed a sentence above the minimum simply because he exercised his right to a trial by jury.

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40-35-401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210.

■ Among the factors applicable to the defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. *State v. Grear,* 568 S.W.2d 285 (Tenn.1978), *cert. denied,* 439 U.S. 1077, 99 S.Ct. 854, 59 L.Ed.2d 45 (1979).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn.Code Ann. § 40–35–302(a). The sentence must be specific and consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Tenn.Code Ann. § 40–35–302(b). A percentage of not greater than 75% of the sentence should be fixed for service after which the defendant becomes eligible for "work release, furlough, trusty status, and related rehabilitative programs." Tenn.Code Ann. § 40–35–302(d). In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. *Id.*

■ Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a period of periodic or continuous confinement. Tenn.Code Ann. § 40–35–302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn.Code Ann. § 40–35–302(f). The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. *State v. Creasy,* 885 S.W.2d 829, 832 (Tenn.Crim.App.1994).

Not surprisingly, most of the claims of the defendant are unsupported by the record. As indicated, there was no trial transcript. And, the defendant has an alternative when there is no court reporter:

If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the *appellant* shall prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or his counsel as an accurate account of the proceeding, shall be filed with the clerk of the trial court within 90 days after the filing of the notice of appeal. . . .

Tenn.R.Crim.P. 24(c) (emphasis added).

■ Here, the defendant chose not to file a statement of the evidence. Instead, he relied upon those pleadings and orders entered into the technical record and other supplemental material. There is very little information helpful to the defendant's cause. And, it is the duty of the defendant to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the bases of the appeal. Tenn. R.App.P. 24(b); *State v. Miller,* 737 S.W.2d 556 (Tenn.Crim.App.1987). In the absence of a record and particularly that portion which relates to the sentence, this court must

presume the correctness of the sentence imposed by the trial court. *State v. Beech,* 744 S.W.2d 585 (Tenn.Crim.App.1987); *Hudson v. State,* 534 S.W.2d 322 (Tenn.Crim.App. 1975).

We should note that Tenn.Code Ann. § 40–35–209 requires trial courts to make findings of fact. Also, the trial judge has the duty to state for the record, either orally or in writing, the applicable enhancement and mitigating factors. Tenn.Code Ann. § 40–35–210(f). These findings constitute the basis for appellate review. *State v. Dies,* 829 S.W.2d 706 (Tenn.Crim.App.1991). While the judgment form obviously does not address some of the matters required by statute, those may have been addressed during the imposition of sentence. The absence of a transcript or statement of the evidence addressing the claimed deficiencies results in a presumption favorable to the position of the state.

Accordingly, the judgment is affirmed.

SUMMERS and WELLES, JJ., concur.

*ORDER ON MOTION TO RECONSIDER*

The defendant, Richard N. Coolidge, has filed a motion to reconsider. The defendant requests that this court reconsider (1) whether the Fourth Circuit Court of Davidson County had jurisdiction over the defendant's case and (2) whether the defendant should be held at fault for the status of the record.

As stated in the opinion, the Probate Court for Davidson County rather than the Fourth Circuit Court was the trial court in this matter and had jurisdiction over the defendant's case. As for the incompleteness of the record on appeal, the defendant failed to file any statement of the evidence to supplement and clarify the record pursuant to Tenn. R.Crim.P. 24(c). Accordingly, the defendant's motion for reconsideration is denied.

/s/ Gary R. Wade
Gary R. Wade,
Judge

/s/ Paul G. Summers
Paul G. Summers,
Judge

/s/ David H Welles
David H. Welles,
Judge