# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### NOVEMBER SESSION, 1998

FILED

April 14, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9807-CR-00239** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **HAMILTON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. DOUGLAS A. MEYER,** |
| **PHILLIP TODD SWORDS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (DUI—Third Offense) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF HAMILTON COUNTY

FOR THE APPELLANT:

JERRY H. SUMMERS
500 Lindsay Street
Chattanooga, TN 37403-3496

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH B. MARNEY
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

BILL COX
District Attorney General

PARKE MASTERSON
District Attorney General
600 Market Street - Courts Building
Chattanooga, TN 37402

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Phillip Todd Swords, appeals as of right from his conviction for third offense DUI in the Criminal Court for Hamilton County. In this appeal, he asserts two primary claims: (1) that he was denied liberty without due process as a result of deficiencies in the customary arrest and bail procedures in Hamilton County, and (2) that the trial court erred by enhancing the conviction at bar due to two prior DUI convictions that Defendant argues are facially invalid. We affirm the decision of the trial court.

## I. DUE PROCESS

To support his argument that he was denied due process of law, Defendant directs our attention to four alleged violations: (1) that he was denied the right to be taken before a magistrate or judge at the time of his arrest, (2) that he was denied the right to have an arrest warrant issued by a neutral and detached magistrate, (3) that the procedures for setting bail do not conform to the Release from Custody and Bail Act, and (4) that he was punished without due process by being detained in the Hamilton County Jail for at least six hours after being booked.

### A. Appearance Before a Magistrate

According to Defendant, the procedure by which a probable cause determination was made following his warrantless arrest by police failed to "serve as a protection against unfounded interference with liberty" and failed to "'provide a fair and reliable determination of probable cause as a condition for any

significant pretrial restraint of liberty.'" Defendant's Brief (quoting <u>Gerstein v. Pugh</u>, 420 U.S. 103, 124-25 (1975)). Defendant correctly maintains that he should have been brought before a magistrate "without unnecessary delay" following his arrest. <u>See</u> Tenn. R. Crim. P. 5; Tenn. Code Ann. § 55-10-203. Furthermore, as Defendant insists, the magistrate should have informed him at this appearance of the nature of the charges against him, as well as his right to counsel during the proceedings. <u>See</u> Tenn. Code Ann. § 40-10-101.

Defendant testified that he received no opportunity to appear before a magistrate or judge on the morning of his arrest. Moreover, a deputy clerk from the Hamilton County Clerk's office explained the usual procedure for those defendants arrested overnight without a warrant: The arresting officer delivers a recitation of probable cause to a deputy clerk, who then grants the warrant and sets bail for the defendant as a matter of course. Customarily, she testified, the accused is seated elsewhere and does not appear before or provide facts to the deputy clerk, just as happened in this case.

Defendant clearly did not receive the proper hearing before a judicial officer, nor was he apprised by such an officer of the nature of the charges against him or of his right to counsel. However, Defendant is not entitled to a remedy in this Court. The Tennessee Supreme Court in <u>State v. Campbell</u>, 641 S.W.2d 890 (Tenn. 1982), a case in which the defendant received no hearing before a magistrate, but was instead permitted to make an appearance bond, concluded,

> The failure to bring the Defendant before a magistrate, as provided by T.C.A. Sec. 55-10-203(a)(3), results only in release from custody of an accused who is still in jail when the issue is

raised, or results in possible exclusion of evidence, [for example,] a confession that occurs during the delay. In short, the delay has no consequence in the law unless the defendant is prejudiced by it.

State v. Campbell, 614 S.W.2d 890, 893 (Tenn. 1982) (citations omitted); see also State v. Billy L. Davis, No. 85-343-III, 1986 WL 5681, at *2 (Tenn. Crim. App., Nashville, May 20, 1986). Here, Defendant made bond approximately six hours after he was booked, and he produced no evidence during that time that was later used against him. We find no prejudice to Defendant; therefore, this issue lacks merit.

*B. Probable Cause Determination*

Defendant next argues that the Hamilton County policy violates his right to have a probable cause determination by a neutral and detached magistrate, see Steagald v. United States, 451 U.S. 204, 216 (1981), in two ways: He asserts that (1) a deputy clerk cannot constitutionally make such a determination and thus issue a warrant, and (2) the office of the court clerk has a financial incentive to issue warrants because of filing costs.

With respect to his first point, Defendant admits that our General Assembly granted deputy court clerks the authority to issue arrest warrants. See Tenn. Code Ann. § 41-6-214. However, he contends that the statute is unconstitutional in light of the United States Supreme Court's opinion in United States v. Leon, 469 U.S. 897 (1984), in which the Court upheld a warrant not supported by probable cause based upon the officer's reliance that the magistrate's determination was "objectively reasonable." Id. at 919-21. Defendant argues,

> This "good faith" exception insures that the final decision on the validity of a warrant will virtually always be decided by the magistrate issuing the warrant and not by the appellate court. . . . However, the

basic underlying assumption of the Court's decision in <u>Shadwick [v. City of Tampa</u>, 407 U.S. 345 (1972),] was that the decisions made by persons not trained in the law would always be subject to appellate review, an assumption which is no longer valid after <u>Leon</u>.

Hence, the absence of appellate review for probable cause determinations by those with no legal training constitutes the basis for this prong of Defendant's due process challenge.

The State correctly responds that Tennessee Code Annotated § 40-6-214 provides, "Clerks of courts of general sessions and their duly sworn deputies have jurisdiction and authority, concurrent with that of the judges thereof, to issue warrants for the arrest of persons." Tenn. Code Ann. § 40-6-214. We decline to hold this statute unconstitutional as applied to deputy clerks of court who may lack legal training. Although we recognize the distinct possibility that deputy clerks without legal training may not be "capable of the probable cause determination" as required by Tennessee Rule of Criminal Procedure 3, Defendant has not made such a factual showing in this case. To otherwise speculate whether the deputy clerks serving Hamilton County are <u>generally</u> incapable of properly recognizing the notion of probable cause due to a lack of legal training would be to encroach upon the domain of our state legislature.

Second, Defendant argues that because the Hamilton County Clerk's office receives a fee for each arrest warrant issued, it has a financial incentive to issue the warrants, disturbing its ability to serve as a neutral and detached adjudicator of probable cause. Defendant contends that "[w]hile the deputy clerk issuing the warrant does not get the fee personally, the General Sessions Clerk's Office

certainly gets the fee, and this fee is used with other revenues to determine how many deputy clerks can be hired."

We conclude that this claim has no merit. First, Defendant has not shown that the compensation for Hamilton County General Sessions deputy clerks is "contingent in any manner upon the issuance or non-issuance" of the arrest warrant at issue in this case, as prohibited by Tennessee Code Annotated § 40-5-106. In addition, we decline to infer that as the clerk's office accrues revenue, the salary of the deputy clerks increases accordingly, influencing their decisions to grant arrest warrants. Furthermore, the State correctly observed that "the proof that defendant did offer by way of [the deputy clerk's] testimony evidenced no inkling that she issued the arrest warrant for any reason other than the facts attested to by the arresting officer and no inkling that she was anything other than detached and neutral."

*C. Bail Procedures*

In a related argument, Defendant asserts that he was denied due process (1) when he was not granted a bail hearing before a judge, magistrate, or court clerk, but by a deputy court clerk, and (2) when his bail was "assigned from a schedule posted on the wall of the jail," with no regard to the statutory factors which should be considered to achieve the functions of bail—assuring the defendant's continued presence in court and preventive detention. The deputy clerk set Defendant's bail at the maximum the law allows a court clerk to set for the offense of DUI. See Tenn. Code Ann. § 40-11-105(b)(1).

Defendant first challenges the authority of the Hamilton County General Sessions deputy clerk to set bail. He contends that having his bail set by a deputy clerk of General Sessions violates Tennessee Code Annotated § 40-11-105, which provides that bail determinations may be made "by the committing magistrate, by any judge of the circuit or criminal court, or by the clerk of any circuit or criminal court." Tenn. Code Ann. § 40-11-105(a)(1) (emphasis added).

We conclude that even if the deputy clerk of the Hamilton County General Sessions court lacked authority to set Defendant's bail, he nevertheless has no remedy in this Court. Tennessee Code Annotated § 40-11-144 states,

> (a) The actions by a trial court from which an appeal lies to the supreme court or court of criminal appeals in granting, denying, setting or altering conditions of the defendant's release shall be reviewable in the manner provided in the Tennessee Rules of Appellate Procedure.
> (b) If the action to be reviewed is that of a court from which an appeal lies to a court inferior to the supreme court or court of criminal appeals, review shall be sought in the next higher court upon writ of certiorari.

Tenn. Code Ann. § 40-11-144. See Tenn. R. App. P. 8. The proper method of review for the determination of Defendant's bail was appeal to the Hamilton County Criminal Court. This issue has been waived. Any other remedy now lies outside this Court's jurisdiction.

With regard to his second argument, Defendant specifically asserts that

> the bail procedures in Hamilton County are contrary to the principles and procedures of the Bail Act since the procedures reflect an arbitrary scheme which determines the form and amount of bail. First, alternative forms of release are not considered in lieu of a cash bond. The Jail does not hold any hearing to determine (i) the defendant's relation to the community, (ii) the defendant's background, or (iii) whether the defendant had a prior criminal record. Second, the bail is set according to a pre-arranged "Bond Schedule" which lists various offenses and a bond amount.

He also cites Tennessee Code Annotated § 40-11-118, which mandates that "bail shall be set as low as the court determines is necessary to reasonably assure the appearance of the defendant as required," and also prescribes factors which "the magistrate shall consider," including the defendant's length of residence in the community; employment status and history; financial condition; family ties and relationships; reputation, character, and mental condition; record of prior presence at or flight from court appearances; nature of the offense, probability of conviction, and likely sentence; prior criminal record and perceived risk of danger to the public; and responsible members of the community who will vouch for the defendant's reliability. See Tenn. Code Ann. § 40-11-118(a), (b) (emphasis added).

We find that Defendant's bail was set in accordance with neither the letter nor the principles underlying the Bail Act noted above. However, we further find that again, any remedy lies outside this Court, as we find no prejudice in the record. The bail set by the deputy clerk, although the maximum bail permissible by the clerk for this offense, did not prevent Defendant from release. In fact, he contends in his next argument that he could have made his bond sooner than the time he was permitted to leave. We conclude, therefore, that Defendant did not suffer prejudice sufficient to permit this Court to find a due process violation warranting reversal of his conviction.

*D. Six-Hour Detention*

Defendant's final due process challenge contests the Hamilton County policy of holding persons charged with DUI for a period of at least six hours. The record reflects that Defendant was arrested shortly after 1:40 a.m., he was taken

to the Hamilton County Jail and booked at 3:45 a.m., and he was released to the bail bondsman at 9:30 a.m. This detention, Defendant claims, constitutes punishment without due process of law.

The State argues that the detention policy is "not unconstitutional" based upon an opinion by our supreme court in State v. Pennington, 952 S.W.2d 420 (Tenn. 1997), and by this Court in State v. Donnie Lamar Carden, No. 03C01-9610-CR-00378, 1997 WL 789933 (Tenn. Crim. App., Knoxville, Dec. 23, 1997), in which the policy was held not to invoke double jeopardy protections, preventing further prosecution for DUI, because the detention is primarily remedial rather than punitive and because jeopardy had not yet attached. This argument does not directly decide the issue at hand. We do not examine whether the detention violates double jeopardy by punishing a defendant twice for the offense of DUI; instead, we determine whether the policy (1) constitutes punishment for refusing to take a breathalyser test (a non-offense), or (2) constitutes punishment for DUI without due process of law.

This Court discussed the due process issue in addition to double jeopardy in State v. Martha L. Pennington, No. 01C01-9607-CC-00323, 1997 WL 602909, at *3-*4 (Tenn. Crim. App., Nashville, Sept. 30, 1997). In that case, the defendant was arrested, registered a 0.13 on an Intoximeter 3000 test, arranged to make her bond, and was not permitted to be released for eight hours pursuant to a policy requiring defendants to be held for a minimum of six hours. We addressed a certified question of law appealed by the defendant: "Whether or not the detention of the defendant, in this case, under the policy of the Dickson County Sheriff's Department, constitutes punishment so as to preclude further

-9-

prosecution on double jeopardy grounds or violates the defendant's due process rights." Id. at *1.

In Martha L. Pennington, we recited the two-part test of State v. Coolidge, 915 S.W.2d 820, 824 (Tenn. Crim. App. 1995), to determine whether pretrial detention qualified as punishment for due process purposes: "(1) whether the detention served an alternative purpose, and (2) whether detention is excessive in relation to the purpose." 1997 WL 602909, at *4. In that case, we found that "[d]etention for the purpose of detoxification may qualify as a legitimate government goal," id. (citing Coolidge, 915 S.W.2d at 823); and the period of six hours of confinement was not shown to be "excessive in relation to the stated purpose." Id. We therefore concluded that the trial court in that case did not err by denying the defendant's motion to dismiss.

We believe the same analysis and result is appropriate in this case. The arresting officer testified that Defendant was "swerving back and forth across the road," and that he was "all over the road, . . . crossed the center line and back to the right . . . , [and] kept weaving down the highway." The officer stated that Defendant had an odor of alcohol and responded that he had indeed been drinking that evening—"about six plus beers." Officer Hill administered field sobriety tests; Defendant failed the one-leg stand and refused to take a walk-and-turn test. He then refused to take a breath or blood test to determine the precise level of intoxication. Subsequent to Defendant's arrest, the officer found two twelve packs of beer in the vehicle in addition to several open beers, at least one of which was cold and half-empty.

From this evidence, we find that the policy of holding Defendant, an apparently intoxicated individual charged with DUI, for a period of six hours from the time of booking was primarily for the purpose of detoxification, and that this period of time was not excessive in relation to the facts of this case. Therefore, we conclude that this pretrial detention did not violate Defendant's right to due process of law.

Finally, we decline to find that the cumulative effect of errors discussed above operated to deny Defendant the right to a fair trial or the right to due process of law such that reversal of his conviction is warranted. This case is distinguishable from decisions such as State v. Livesay, 941 S.W.2d 63 (Tenn. Crim. App. 1996), in which this Court affirmed the trial court's dismissal of charges based upon a deprivation of due process where the defendant was denied the right to draw and test a blood sample independent of the sample drawn and tested by the State.

The State argued in Livesay that the defendant must show actual prejudice to be entitled to relief from this Court. Id. at 67. We held that while the defendant could not show that the evidence of which he was deprived would have been favorable enough to effect a dismissal, it was sufficient to show that the evidence, if favorable to the defendant, "could easily have secured his acquittal." Id. at 66 (emphasis added). We cannot find a parallel deprivation in this case. Defendant's due process argument must fail.

## II. PRIOR CONVICTIONS

In his second major issue, Defendant contends that his sentence should not have been enhanced to third-offense DUI based upon his two prior guilty pleas because those pleas were invalid. Defendant pleaded guilty to DUI in 1989 and 1992. He argues that he should be permitted to attack the validity of the former conviction because the record fails to show that the trial court (1) advised him of the specific ramifications of waiving counsel, (2) informed him of various constitutional rights as required by Boykin v. Alabama, 395 U.S. 238 (1969), and (3) followed procedural protections such as ensuring a factual basis for the plea and creating a verbatim record of the plea hearing. He argues that he should be permitted to attack the validity of the latter conviction because the record does not reflect that Defendant was advised his guilty plea could be used to enhance the sentences for subsequent convictions. See State v. Mackey, 553 S.W.2d 337 (Tenn. 1977).

According to our supreme court in State v. McClintock, 732 S.W.2d 268 (Tenn. 1987), "The rule has been firmly established in Tennessee that a facially valid, unreversed judgment in a court with jurisdiction over the subject matter and the person cannot be collaterally attacked in a subsequent proceeding except by the authorized routes of attack." Id. at 272. We decline to hold the rule announced in McClintock unconstitutional following institution of a statute of limitations for post-conviction petitions, as Defendant requests that this Court hold.

The McClintock court indicated the meaning of facial invalidity in its conclusion based upon the facts of that case:

> [T]he present proceeding in the case sub judice, a direct appeal of Defendant's most recent conviction, is not the forum in which Defendant's Constitutional claims may be raised because nothing on the face of the record "discloses any want of authority to pronounce that judgment. Hence, collateral attack [is] not permissible."

Id. (alteration in original) (quoting Bomar v. State ex rel. Stewart, 300 S.W.2d 885, 887-88 (Tenn. 1957)). In addition, this Court examined "whether [a] judgment is void on its face and thus subject to collateral attack," in State v. Gross, 673 S.W.2d 552 (Tenn. Crim. App. 1984). In that case, we concluded,

> The record shows the appellee, represented by counsel, appeared before the general session court. He and his attorney signed a waiver of indictment, presentment, etc., and the appellee entered a plea of guilty to the charge of DUI. . . . The General Sessions Court of Sullivan County had jurisdiction over the subject matter of the charge and it had personal jurisdiction of this appellee.

Id. at 553-54. Furthermore, in State v. Gallaher, 730 S.W.2d 622 (Tenn. 1987), our supreme court held a conviction facially valid where

> [t]he record shows on its face that [the defendant] executed waivers to the effect that she was fully advised of her rights and expressly advised of her right to the aid of counsel at every stage of the proceeding and if necessary an attorney would be appointed to represent her; that she expressly waived her right to counsel, to a preliminary hearing, to a grand jury indictment, and a trial by jury.

Id. at 623.

Likewise, we find nothing on the face of the records that discloses any invalidity to the guilty-plea convictions for DUI in 1989 and 1992. See Maurice Wilson v. State, No. 01C01-9310-CR-00352, 1994 WL 151322, at *2 (Tenn. Crim. App., Nashville, Apr. 28, 1994) ("[The defendant's] claims of an involuntary guilty plea and ineffective assistance of counsel, while they might serve to void

the judgment, do not make it facially void."). Therefore, we conclude that the Post-Conviction Procedure Act is the authorized potential route of attack for Defendant.

We conclude that Defendant is not entitled to relief in this Court based upon the asserted violations of due process, and that he is not entitled to attack the validity of his prior DUI convictions to prevent them from enhancing his current sentence for third-offense DUI. The judgment of the trial court is affirmed.

_____\
DAVID H. WELLES, JUDGE

CONCUR:

_____\
JAMES CURWOOD WITT, JR., JUDGE

_____\
L.T. LAFFERTY, SPECIAL JUDGE