# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 19, 2002 Session

## STATE OF TENNESSEE v. MICHAEL J. YOUNG

### Direct Appeal from the Circuit Court for Rutherford County
### No. F-50006     James K. Clayton, Jr., Judge

_____

### No. M2002-00760-CCA-R3-CD - Filed January 7, 2003

_____

The defendant pled guilty to two counts of sexual battery by an authority figure and two counts of statutory rape. He received agreed sentences totaling five years. The defendant sought alternative sentencing from the trial court, which was denied. In this appeal, the defendant argues the trial court improperly denied alternative sentencing. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Patrick T. McNally and Joseph T. Howell, Nashville, Tennessee, for the appellant, Michael J. Young.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and John W. Price, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The proof in the record establishes that while the thirty-year-old defendant was serving as a Rutherford County Sheriff's Department school resource officer, he was involved over a period of several months in sexual relationships with two teenage girls, C.F. and A.Y.,[1] who were students at the school. The defendant pled guilty to one count of sexual battery by an authority figure, a Class C felony, and one count of statutory rape, a Class E felony, for each victim, for a total of four convictions as a Range I standard offender. *See* Tenn. Code Ann. §§ 39-13-506, -527 (1997). As part of the plea agreement, he received a total effective sentence of five years. Following a sentencing hearing, the trial court rejected the defendant's request for alternative sentencing.

_____

[1]It is the policy of this court to refer to child victims of sexual crimes by their initials.

The record consists not only of the sentencing hearing transcript, but also additional transcripts of prior hearings. According to the testimony of C.F. at the sentencing hearing and at prior hearings, she was a fourteen-year-old eighth grader at the school where the defendant was assigned as a school resource officer. The defendant gave her his telephone number during a school dance. She said she began visiting the defendant's apartment, where she and the defendant engaged in sexual relations on five or six separate occasions between December 1999 and April 2000. She testified the defendant also provided her with alcohol and marijuana during their trysts.

C.F. stated her first sexual contact with the defendant involved only oral sex, but thereafter each episode involved oral sex followed by sexual intercourse. C.F. testified the defendant videotaped her having oral sex with both him and his adult friend. C.F. said the defendant threatened to commit suicide if she ever told anyone about their relationship. In a victim impact statement attached to the presentence report, C.F. indicated the offenses had profoundly affected her. She said that as a result, she suffered from depression, had been suicidal, was taking anti-depressants and receiving therapy.

C.F.'s mother testified that C.F. had been placed on a special school program due to her emotional difficulties. She stated C.F. suffered from depression, would cut herself in an effort to ease her emotional pain, was taking anti-depressants, and was being treated by a psychiatrist and a therapist. In a victim impact statement, she said C.F. had also run away twice and had been suicidal.

A.Y. testified at sentencing and at prior hearings that she was a fourteen-year-old seventh grader when she began a sexual relationship with the defendant in December 1999. She said she and the defendant had sexual relations approximately five times between December and June, and they engaged in oral sex and sexual intercourse each time. According to A.Y., she consumed alcohol and used marijuana while she was at the defendant's apartment. A.Y. testified the defendant introduced her to his adult friend, who performed oral sex on her, and to other adults who gave her liquor and marijuana.

According to A.Y., the defendant told her that he loved her, and she thought she was in love with him. She testified at a prior hearing that she was pregnant with the defendant's child, but miscarried. She also indicated her family moved to Ohio because it was difficult for her to remain in school in Rutherford County after other students learned about her relationship with the defendant.

A.Y.'s mother testified that her daughter's grades suffered following the offenses. She said that after the offenses, A.Y. began "acting out," drinking, and taking drugs. She confirmed the family had moved to Ohio to remove A.Y. from the situation in Rutherford County.

Psychologist Dr. Danita Hughes, who treated A.Y., testified A.Y. had run away from home and exhibited other behavioral disturbances. Dr. Hughes opined A.Y. would experience adjustment problems and have difficulty relating to her peers until her mid-twenties.

According to the defendant's testimony at sentencing, he worked with C.F. in his role as school resource officer during a previous school year when she was having problems at school. He

also testified A.Y. was "a little bit of a wild child," but that he did not have much contact with her at school; instead, he became involved with her through her friendship with C.F. The proof also established that the defendant was a college graduate with a B.A. degree in psychology and political science. At the time of the offenses, he had been a Rutherford County Sheriff's Department officer for two years after serving as a police officer on a college campus for four years.

Further, the proof revealed that prior to the instant offenses and while the defendant was a law enforcement officer, he pled guilty to the "reduced" offense of reckless driving in response to a charge for DUI.[2] He received a six-month sentence, all suspended but five days, and was required to attend alcohol safety school. According to the presentence report, the defendant admitted to past use of marijuana.

Other proof at sentencing established the defendant remained in maximum security in the Rutherford County Jail for over seven months before being released on bond. At the time of sentencing, the defendant was employed as a sales representative; his supervisor testified he was performing his job well and was eligible for continued employment. The defendant's brother and another friend, a lay pastor and school principal, testified they would serve as part of the defendant's support system should he be released into the community.

The trial court denied the defendant's request for alternative sentencing, finding confinement was necessary to avoid depreciating the seriousness of the offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B). The trial court noted that the defendant violated his duty to protect children when, as a school resource officer with the sheriff's department, he "undertook to become involved with at least two students that were of impressionable age."[3] It further noted the defendant had a college degree in psychology and "had every opportunity to know what he was doing was wrong."

## I. WAIVER

The facts and circumstances of the offenses were important to the trial court's sentencing determinations; however, the transcript of the guilty plea proceeding is absent from the record. A transcript of the guilty plea hearing is generally necessary to allow this court to ascertain the facts and circumstances surrounding the offenses and conduct an effective appellate review of a sentencing decision. State v. Keen, 996 S.W.2d 842, 843-44 (Tenn. Crim. App. 1999). Our usual course of action where there is no guilty plea transcript in the record is to presume the trial court's decision is correct. *Id.* at 844; *see also* State v. Coolidge, 915 S.W.2d 820, 826-27 (Tenn. Crim. App. 1995) (specifically stating that the absence of a portion of the record relating to sentencing requires the court to presume the sentence was correct). Nevertheless, the record before this court,

---

[2]We note that reckless driving is not a proper lesser-included offense of DUI. *See* State v. Treva Dianne Green, No. E1999-02204-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 954, at *16 (Tenn. Crim. App. Dec. 14, 2000, at Knoxville), *perm. to app. denied* (Tenn. 2001).

[3]A third teenage girl testified during a prior hearing that she had sexual relations with the defendant, whom she met while she was an eighth grader at the elementary school.

including defendant's submission of transcripts of various hearings in addition to the sentencing hearing transcript, is sufficient for us to determine the trial court did not err in denying alternative sentencing.

## II. ALTERNATIVE SENTENCING

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) (1997), Sentencing Commission Comments.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1) (1997); *see also* State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). A court may also consider the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and 114 as they are relevant to the section 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5) (1997); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2) (1997); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

As previously stated, one of the considerations a trial court must weigh in determining whether to impose a sentence of confinement is whether confinement is necessary to avoid depreciating the seriousness of the offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B) (1997). Where alternative sentencing is denied based solely upon the nature of the offense, the offense must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive

or exaggerated degree," and its nature must outweigh all the factors which favor alternative sentencing. State v. Fields, 40 S.W.3d 435, 441 (Tenn. 2001).

## III.  ANALYSIS

In the instant case, the trial court ordered the defendant to serve his sentences in confinement after determining that confinement was necessary to avoid depreciating the seriousness of the offenses. This conclusion is amply supported by the proof in the record. In our view, the evidence before the trial court established the offenses committed by the defendant and to which he pled guilty were  especially shocking, reprehensible, and offensive. *See id.*

The evidence showed the defendant was aware that one of the victims, C.F., was already experiencing behavioral problems when he initiated a sexual relationship with her while acting in his role as a school resource officer. Then, the defendant, a law enforcement officer, encouraged both C.F. and her friend, A.Y., to come to his home without the knowledge and permission of their parents. He drew both teenagers into sexual relationships in which he committed repeated and numerous sexual offenses upon them.

He introduced the victims to another adult man, who also engaged both of them in sexual activity, and videotaped the acts he and his friend committed with one of the victims. The testimony of the victims indicated he allowed them to smoke marijuana and drink alcohol. It is not surprising that the offenses had a drastic impact upon the emotional well-being of the victims. *See* State v. Arnett, 49 S.W.3d 250, 260 (Tenn. 2001) (noting that the particularly great personal injuries enhancement factor in Tennessee Code Annotated section 40-35-114(6) (1997) includes psychological or emotional injuries.)

It is clear from the record that the nature and circumstances of the offenses outweighed the factors that favored probation. Although the defendant was presumed to be a favorable candidate for alternative sentencing, *see* Tenn. Code Ann. § 40-35-102(6) (1997), the proof of his repeated and egregious acts against the victims was more than sufficient to overcome this presumption.

Further, there are other factors which the trial court could have properly considered in imposing a sentence of incarceration. The defendant had a prior conviction involving alcohol, for which he had received alternative sentencing. In addition, he admitted to past use of illegal drugs. The instant offenses also involved alcohol and drugs, which bears upon the defendant's amenability to rehabilitation.

Accordingly, we conclude the trial court did not err in denying alternative sentencing. We affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

-5-