IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 7, 2020 Session

## IN RE ESTATE OF HENRY C. ELLIS III

**Appeal from the Circuit Court for Shelby County**
**No. CT-004270-18  Gina C. Higgins, Judge**

————————————————————

### No. W2019-02121-COA-R3-CV

————————————————————

Appellant appeals the circuit court's decision to allow a law firm to intervene in an estate matter. Because we conclude that the circuit court lacked subject matter jurisdiction over this estate matter, we vacate the decision of the circuit court and remand with instructions to transfer this matter back to probate court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Richard W. Parks, Memphis, Tennessee, for the appellant, Nancy Neely.

Edward T. Autry, Memphis, Tennessee, for the appellee, Williams McDaniel, PLLC.

## OPINION

### PROCEDURAL AND FACTUAL HISTORY

Although this case ostensibly involves only a single narrow issue, we must unfortunately begin at the beginning. The record on appeal, however, is somewhat sparse. We therefore take the procedural history of this case from various pleadings filed in the trial court to the extent that they appear undisputed, as well as a prior opinion involving this case. *See In re Estate of Ellis*, No. W2019-01431-COA-T10B-CV, 2019 WL 4566962 (Tenn. Ct. App. Sept. 20, 2019). In June 2015, a conservatorship proceeding was initiated in the Shelby County Probate Court ("the probate court") for Henry C. Ellis, III. Judge Kathleen Gomes was assigned to preside. In September 2016, an independent conservator

was appointed.[1] Judge Gomes continued to preside over the conservatorship matter without dispute until May 30, 2018, when an attorney entered an appearance in the matter for Mr. Ellis's daughter, Petitioner/Appellant Nancy Neely ("Appellant"), the Trustee of the Henry C. Ellis, III Revocable Living Trust. On the same day, Appellant filed a motion to recuse due to a conflict between Appellant's counsel and Judge Gomes. On June 6, 2018, Judge Gomes initially denied the motion due to procedural noncompliance.

On July 6, 2018, Mr. Ellis passed away. Appellant thereafter filed a petition in probate court to admit Mr. Ellis's will to probate and to be appointed executor of his estate. This case was again assigned to Judge Gomes.

On August 22, 2018, Judge Gomes, *sua sponte*, entered an order recusing herself from the conservatorship matter and transferring the matter to Division IV of the Shelby County Circuit Court ("the circuit court"), Judge Gina Higgins presiding. On September 17, 2018, Judge Gomes entered a similar order also recusing herself from the probate proceedings, and transferring the "Estate File" to Division IV of circuit court "as a companion file." This order was sent to both Judge Higgins, and Judge Robert S. Weiss, the Presiding Judge of the Thirtieth Judicial District ("the Presiding Judge"). After this order of transfer, all subsequent filings in this case reflected a circuit court docket number and were captioned as being filed in circuit court.

On October 3, 2018, Betty E. Fry and Vera E. Poag ("Interested Parties"), parties interested in Mr. Ellis's estate, filed a motion requesting that the probate matter be transferred to chancery court, as circuit court lacked jurisdiction over estate matters. On October 11, 2018, Mr. Ellis's conservator filed a response.[2] Therein, the conservator conceded that while circuit court does not typically have jurisdiction in estate matters, the circuit judge was nonetheless properly sitting by interchange under Rules 10B and 11 of the Tennessee Supreme Court, discussed in detail *infra*. Moreover, the conservator alleged that Judge Gomes had not violated Rule 10B in choosing her own successor because an affidavit filed in the conservatorship action by the Presiding Judge confirmed that he had made the decision to transfer both the conservatorship and the estate matter to Division IV of circuit court. The conservator therefore argued that the circuit court had jurisdiction to adjudicate the estate action. The cited affidavit, however, was not attached to the response. Likewise, no order of interchange from the Presiding Judge was attached to the response, and nothing therein indicated that the Presiding Judge actually entered an order to effect the purported interchange. After this response was filed, it appears that neither the parties nor the circuit court gave the issue of the circuit court's subject matter jurisdiction further consideration.

---

[1] The identity of the conservators appointed has changed over the years. These changes are not relevant to this appeal.

[2] The response states that it was filed in the conservatorship action, but it bears the docket number assigned to the estate matter.

Appellant thereafter filed an amended petition to admit the will to probate, which included some additional factual allegations.[3] On February 18, 2019, Appellant filed a motion to recuse the circuit court judge in both the probate and conservatorship cases. Appellant alleged, *inter alia*, that a conflict existed because Judge Higgins was a candidate in the same election in which Appellant's counsel had run against Judge Gomes. Appellant asked that a trial judge outside of Shelby County be appointed. Appellant later filed an amended motion to recuse on February 22, 2019.

Meanwhile, on February 18, 2019, Intervenor/Appellee Williams McDaniel, PLLC ("Williams McDaniel") provided notice of the filing of a consent order in a separate Shelby County Chancery Court matter between Appellant and Williams McDaniel. The consent order provided that a judgment was entered in favor of Williams McDaniel against Appellant in the amount of $40,000.00. Additionally, the parties agreed that the judgment "may be satisfied from funds to be received by [Appellant] from any distribution of her share of her father's Estate." It was therefore further agreed that

> 4.      At such time, and from time to time, any amount of money is to be distributed to [Appellant] from the Estate, even if such monetary distribution is less than $40,000.00, [Williams McDaniel] shall have the first right to receive such monetary distribution directly from the Estate until this Consent Order of Judgment has been fully satisfied, and [Appellant] shall participate however necessary in order to cause the Estate to effectuate distribution to [Appellant].
>
> * * *
>
> 7.      Upon receipt of an amount that satisfied this Consent Order of Judgment, [Williams McDaniel] shall agree to the submission and entry of a Satisfaction of Judgment.

Williams McDaniel thereafter filed a motion to intervene in the estate matter based on the consent judgment on April 19, 2019. Therein, Williams McDaniel argued that the consent judgment gave it priority interest in any estate assets ultimately distributed to Appellant and that it was permitted to intervene under Rule 24.01 of the Tennessee Rules of Civil Procedure. The motion to intervene was accompanied by a memorandum of law.

On May 20, 2019, the circuit court denied Appellant's initial motion to recuse on technical grounds. The circuit court's order specifically reserved ruling on Appellant's

---

[3] Although this pleading was styled as an amended petition, it actually constituted an amendment to the original petition. *See* **Murray v. Hollin**, No. M2011-02692-COA-R3-CV, 2012 WL 6160575, at *2 (Tenn. Ct. App. Dec. 10, 2012) ("By way of edification, an 'amended' complaint and an 'amendment to' a complaint are two different things. An 'amended complaint' is complete in itself without adoption or reference to original; as such, it supersedes and destroys the original complaint as a pleading. An 'amendment' to a complaint merely modifies the existing complaint, which remains before the trial court as modified.") (citations omitted).

amended motion. Both Interested Parties and Williams McDaniel thereafter opposed the amended motion to recuse. On July 19, 2019, the circuit court entered an order denying Appellant's amended motion to recuse. Appellant responded by filing a third motion to recuse on August 2, 2019. The effort was again unsuccessful, as the circuit court entered an order denying the motion on the same day. Appellant then filed an accelerated interlocutory appeal of the circuit court's denial of the third recusal motion. This Court requested a response from Interested Parties on August 27, 2019. On September 20, 2019, this Court entered an order affirming the circuit court's denial of the second recusal motion. *See* **In re Estate of Ellis**, 2019 WL 4566962, at *9.

On October 10, 2019, Interested Parties filed their own petition for probate of an attested will and for the appointment of a personal representative. This filing indicates that Interested Parties were submitting the same will for probate as had previously been submitted by Appellant. On October 28, 2019, the circuit court entered an order granting Williams McDaniel's petition to intervene as an interested party. Pursuant to Rule 24.05 of the Tennessee Rules of Appellate Procedure, Appellant thereafter filed a timely notice of appeal of the order to this court.[4]

## DISCUSSION

The parties in this case confine their arguments to the sole question of whether the circuit court erred in granting Williams McDaniel's motion to intervene.[5] Pursuant to Rule 13(b) of the Tennessee Rules of Appellate Procedure, however, we are also directed to consider "whether the trial and appellate court have jurisdiction over the subject matter[,]" even if not presented for review. Although this Court has subject matter jurisdiction to consider an appeal from an order granting a motion to intervene, we must conclude that the

---

[4] Rule 24.05 provides that "[a]ny order granting or denying a motion to intervene filed pursuant to this rule shall be a final judgment for purposes of [Rule] 3 [of the Tennessee Rules of Appellate Procedure]."

[5] Of course, Appellant raises this issue in a somewhat more verbose fashion. The exact issue she raises on appeal is as follows:

> Did the trial court err in granting [Williams McDaniel's] motion to intervene as of right in [Mr. Ellis's] Last Will and Testament pursuant to Rule 24.01 of the Tennessee Rules of Civil Procedure in light of the fact that: a) [Williams McDaniel] is not a judgment creditor of nor does it have a cause of action against [Mr. Ellis] nor any heir of [Mr. Ellis] under the terms of the Will and therefore has no substantial interest relating to the property or transaction which is the subject of [Mr. Ellis's] estate; b) the disposition of [Mr. Ellis's] estate will not as a practical matter impair or impede [Williams McDaniel's] legal right or ability to protect its interest via its otherwise legally enforceable consent judgment; c) there was no prior stipulation of all the parties to the granting of [Williams McDaniel's] motion to intervene; and d) there was no proof offered by [Williams McDaniel] that the parties to the underlying suit could not adequately represent [Williams McDaniel's] interest.

circuit court lacked subject matter jurisdiction over this estate matter.

A challenge to a court's subject matter jurisdiction calls into question "the court's 'lawful authority to adjudicate a controversy brought before it,' and, therefore, should be viewed as a threshold inquiry." **Redwing v. Catholic Bishop for Diocese of Memphis**, 363 S.W.3d 436, 445 (Tenn. 2012) (internal citation omitted) (citing **Northland Ins. Co. v. State**, 33 S.W.3d 727, 729 (Tenn. 2000); **Schmidt v. Catholic Diocese of Biloxi**, 2008-CA-00416-SCT (¶ 13), 18 So.3d 814, 821 (Miss. 2009)). "Whenever subject matter jurisdiction is challenged, the burden is on the plaintiff to demonstrate that the court has jurisdiction to adjudicate the claim." **Id.** (citing **Staats v. McKinnon**, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006)). "The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." **Dishmon v. Shelby State Cmty. Coll.**, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citing Tenn. R. Civ. P. 12.08). "Subject matter jurisdiction depends on the nature of the cause of action and the relief sought, and can only be conferred on a court by the constitution or a legislative act." **Chapman v. DaVita, Inc.**, 380 S.W.3d 710, 712 (Tenn. 2012) (internal citation omitted) (citing **Landers v. Jones**, 872 S.W.2d 674, 675 (Tenn. 1994); **Kane v. Kane**, 547 S.W.2d 559, 560 (Tenn. 1977)). The question of whether a court possesses subject matter jurisdiction is an issue of law, which we review de novo. **Id.** at 712–13.

This case is an estate action involving the probate of a will. *Cf.* **In re Estate of Trigg**, 368 S.W.3d 483, 501 (Tenn. 2012) ("The word 'estate' is a very comprehensive term in the context of wills and probate proceedings."). Pursuant to statute, unless otherwise provided by statute, jurisdiction over estate issues lies in chancery court:

> In all counties where not otherwise specifically provided by public, private, special or local acts, all jurisdiction relating to the probate of wills and the administration of estates of every nature, including the estates of decedents and of wards under guardianships or conservatorships and related matters previously vested in the county court, the county judge or county chair, is vested in the chancery court of the respective counties. The chancery court in such counties shall have exclusive jurisdiction over the probate of wills and the administration of estates of every nature, including the estates of decedents and of wards under guardianships or conservatorships, and all matters relating thereto, previously vested in the county court.

Tenn. Code Ann. § 16-16-201(a). Shelby County is among the localities in which jurisdiction over these matters has been vested in a probate court. *See* **In re Jones' Estate**, 44 Tenn. App. 323, 333–34, 314 S.W.2d 39, 43 (Tenn. Ct. App. 1957) ("The Probate Court of Shelby County was created by Chapter 86, Private Acts of the General Assembly of the State of Tennessee of 1870. By Sec. 2 thereof, it is given original jurisdiction of all probate matters . . . ."). The only jurisdiction that circuit court has over probate matters is when a will contest is filed. *See* Tenn. Code Ann. § 32-4-109 ("Any court of record that has probate

jurisdiction, whether a chancery court or other court of record established by private or public act, has concurrent jurisdiction with the circuit court to conduct a trial upon the validity of a will, in the manner and to the extent prescribed in this chapter."); ***In re Estate of Barnhill***, 62 S.W.3d 139, 142–43 (Tenn. 2001) ("[W]hen a chancery court serves as the probate court for a county, pursuant to Tenn. Code Ann. § 16-16-201(a), the chancery court has discretion to certify the will contest for trial in the circuit court or it may simply assume jurisdiction over the trial of the will contest . . . ."); Lawrence A. Pivnick, 1 *Tennessee Circuit Court Practice*, § 3.5, at p. 214–15 (2019–20 ed.) (explaining that circuit courts lack subject matter jurisdiction over "cases involving probate and the administration of estates of decedents other than will contests").

Nothing in the appellate record indicates that a will contest was filed in this case,[6] much less certified to circuit court. As such, it does not appear that the circuit court has subject matter jurisdiction in this matter. Rather, subject matter jurisdiction was vested exclusively in probate court.

While the parties certainly do not address the circuit court's subject matter jurisdiction in their briefs to this Court, it does appear that one party did raise the issue of subject matter jurisdiction in the circuit court. After the conservator argued that jurisdiction was proper based on various statutes and court rules, however, the issue appears to have been dropped. We will therefore consider whether these sources confer subject matter jurisdiction on the circuit court.

Specifically, the conservator argued that the circuit court was properly sitting by interchange after the recusal of Judge Gomes. We therefore begin with Rule 10B, the Tennessee Supreme Court Rule governing recusal. Section 1.04 of that rule provides that

> A judge who recuses himself or herself, whether on the judge's own initiative or on motion of a party, shall not participate in selecting his or her successor, absent the agreement of all parties. With the agreement of all parties to the case, the judge may seek an interchange in accordance with Tenn. Sup. Ct. R. 11, § VII(c)(1). Otherwise, the presiding judge of the court shall effect an interchange in accordance with Tenn. Sup. Ct. R. 11, § VII(c)(2) and/or (3) in sequential order.

Tennessee Supreme Court Rule 11, section VII(c)(2) in turn provides that the recusing judge "shall apply to the presiding judge or, if the applying judge is the presiding judge, the presiding judge pro tempore of the judicial district to effect an interchange with a judge of that judicial district in accordance with Tenn. Code Ann. § 16-2-509(c)."[7] *See also* Tenn.

---

[6] Although two petitions were filed to admit will to probate, both concerned the same April 16, 2013 will.

[7] Subsection (3) involves interchange with a judge from outside the judicial district, and is therefore

- 6 -

Code Ann. § 16-2-509(c) (giving the presiding judge power to assign cases). Jurisdictional issues that arise in the interchange scenario are governed by two statutes. First, Tennessee Code Annotated section 16-2-502 provides as follows:

> Each trial court judge shall continue to be officially known and designated as either a chancellor, circuit court judge, criminal court judge, or law and equity court judge, depending upon the position to which the chancellor or judge was elected or appointed prior to June 1, 1984. Any judge or chancellor may exercise by interchange, appointment, or designation the jurisdiction of any trial court other than that to which the judge or chancellor was elected or appointed.

Second, Tennessee Code Annotated section 17-2-206 provides that "[i]n all such cases, the judge or chancellor holding court in the circuit or division of another, shall have the same power and jurisdiction as the judge or chancellor in whose place the judge or chancellor is acting."

Having determined the proper framework for reviewing the jurisdictional issues in this case, we have uncovered a multitude of issues. As an initial matter, it appears that the order in which Judge Gomes recused and transferred the estate matter to circuit court was signed only by Judge Gomes. Of course, Rule 10B specifically prohibits trial judges who recuse from picking their successors. *See* Tenn. R. Sup. Ct. 10B, § 1.04. In the circuit court, the conservator argued that Judge Gomes did not in fact pick her own successor, citing an affidavit signed by the Presiding Judge that had been filed in the conservatorship matter. Unfortunately, this affidavit was not filed in the case-at-bar, so we only have the unsupported assertions of the conservator to establish these facts. And arguments are simply not evidence. *See* ***Dayhoff v. Cathey***, No. W2011-02498-COA-R3-JV, 2012 WL 5378090, at *2 (Tenn. Ct. App. Nov. 1, 2012) (citing ***Metro. Gov't of Nashville & Davidson Co. v. Shacklett***, 554 S.W.2d 601, 605 (Tenn. 1977)). Moreover, even the assertions of the conservator do not indicate that the Presiding Judge actually entered an order effecting the interchange.

We note, however, that neither party has raised the issue of Judge Gomes's compliance with Rule 10B on appeal. It does not appear that this Court has ever previously held that a trial court's participation in picking his or her own successor implicates issues of subject matter jurisdiction. *But see* ***Arrington v. Broyles***, No. E2016-00363-COA-R3-CV, 2017 WL 541536, at *4 (Tenn. Ct. App. Feb. 10, 2017) (holding that orders on substantive matters that are entered after an order of recusal are "void and must be vacated"). Indeed, this Court has previously held in other contexts that procedural errors concerning orders of appointment are not fatal when the appointed judge acts in good faith. *See* ***State ex rel. Williams v. Woods***, 530 S.W.3d 129, 138 (Tenn. Ct. App. 2017) (citing

---

not at issue in this case. Tenn. Sup. Ct. R. 11, § VII(c)(3).

***Ferrell v. Cigna Prop. & Cas. Ins. Co.***, 33 S.W.3d 731, 739 (Tenn. 2000)) ("Although the absence of an appointment order is a procedural error, the procedural error is not necessarily fatal. If a judge is acting under the color of law absent bad faith, the special judge may serve as a de facto judge, and his or her acts will be binding on the parties." (citations omitted)).[8] Finally, although no proper evidence was presented of this fact, neither party on appeal appears to dispute that the Presiding Judge was in fact involved in the proceedings following the recusal of Judge Gomes. As such, we are hesitant to hold that this violation of Rule 10B, standing alone, deprives the circuit court of subject matter jurisdiction in such a way that we must correct the error even in the absence of an objection by any party.

Judge Gomes's possible violation of Rule 10B aside, a far more difficult issue to side-step remains. We do not dispute that circuit court judges may sit by interchange in the probate court notwithstanding that their court would not have subject matter jurisdiction to decide probate matters. *See generally* Tenn. Code Ann. § 17-2-206. But that is simply not what occurred in this case.

In this case, the effect of Judge Gomes's order was not that a circuit court judge was designated to sit by interchange in probate court; rather, this case was transferred to circuit court. The appellate record simply allows no other conclusion. Following the transfer, the docket number of the action was changed to reflect that the action was pending in circuit court. Concomitantly, all of the pleadings and orders in this case began to be captioned as filed in circuit court. None of the orders signed by the circuit court judge indicate that she was sitting in probate court by interchange; rather, the judge signed as judge of circuit court, Division IV. And the appellate record was compiled by the circuit court clerk, rather than by the appropriate officials with the probate court. Finally, the opinion previously issued following an accelerated interlocutory appeal to this Court specifically states that both the estate and conservatorship matters "were transferred to" circuit court. ***In re Estate of Ellis***, 2019 WL 4566962, at *1. The opinion also reflects that the case was decided in circuit court and gives no indication that the circuit court judge was merely sitting in probate court by interchange. ***Id.***

The transfer of a case to another court without subject matter jurisdiction is not contemplated by our rules governing interchange. Section 17-2-206 expressly contemplates that a judge who interchanges will "hold[] court in the circuit or division of another," thereby acquiring the powers of the judge "in whose place the judge or chancellor is acting." Another statute that specifically deals with the power of circuit court judges to interchange with chancellors indicates that the proper procedure is for the circuit court to act as chancellor, not for the case to be transferred to the circuit court:

---

[8] Although there was a motion to recuse Judge Higgins, the denial of that motion was affirmed by this Court. ***In re Estate of Ellis***, 2019 WL 4566962, at *9. As such, nothing in the record indicates that Judge Higgins has failed to act in good faith.

When any chancellor is incompetent to try any cause in the court for which the chancellor is responsible, circuit judge may hear and determine the cause as chancellor, for which purpose the clerk of the chancery court shall bring before the chancellor all the papers in the cause, and the necessary entries shall be made on the minutes of the chancery court, and signed by the circuit judge presiding.

Tenn. Code Ann. § 17-2-112. Thus, while the circuit judge presides over the case, it remains within the subject matter jurisdiction of the chancery court. Although this statute may arguably be inapplicable to probate courts,[9] statutes involving the same subject matter should be read *in pari materia*, "that is, [a doctrine by which] statutes must be construed together when they relate to the same subject matter and share a common purpose." *In re Kaliyah S.*, 455 S.W.3d 533, 548 (Tenn. 2015); *see also* *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) ("[T]he construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute."). These statutes, when read together, clearly indicate that an interchange is effected by a judge sitting in a court to which he or she was not elected or appointed, not the transfer of a case from one court to another. In other words, our interchange framework does not grant a *court* that otherwise lacks subject matter jurisdiction the power to adjudicate the case; it simply authorizes judges from other courts to sit by interchange in a court with subject matter jurisdiction when the original judge cannot preside over the matter for whatever reason.

Caselaw supports our interpretation of these statutes. For example, in *Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *4 (Tenn. Ct. App. Aug. 12, 2011), the appellant filed a petition for orders of protection in Sumner County Chancery Court. The appellee filed a motion to dismiss or to transfer jurisdiction and venue. The chancellor denied the motion, but ruled that because other related matters were also pending before the Sumner County Juvenile Court ("the juvenile court"), the juvenile judge would hear the order of protection matter by interchange. On appeal, the appellant argued that the matter had been improperly transferred to juvenile court. We rejected this argument, however, because the chancellor "did not transfer the order of protection to another court but merely ordered that [the juvenile judge] would hear the case by interchange."[10] *Id.* at *4.

---

[9] Of course, probate courts are simply limited jurisdiction courts that are exercising the same power that chancery courts wield in other counties. As such, we discern no distinction for purposes of this case.

[10] We went further to hold, however, that a juvenile judge could not interchange with a chancellor, but there being no objection, the juvenile judge had de facto power. *Id.* at *5. Tennessee law provides that general sessions and juvenile court judges may only interchange with each other. *See* Tenn. Code Ann. § 17-2-208 ("Notwithstanding any other law to the contrary, judges of courts of general sessions and juvenile courts may interchange with each other whenever causes exist making an interchange necessary or for mutual convenience."). There is no similar limitation on the interchange abilities of probate judges. *Cf. In re Estate of Nelson*, No. W2006-00030-COA-R3-CV, 2007 WL 851265, at *1 (Tenn. Ct. App. Mar. 22,

In *Fry v. Cermola*, No. 03A01-9507-JV-00246, 1996 WL 30903 (Tenn. Ct. App. Jan. 29, 1996), we also looked to the pleadings and orders filed in the case, all of which noted that the case remained "in the Hamblen County Juvenile Court," to hold that the case had not been transferred to general sessions court, despite being presided over by the general sessions judge by interchange. *Id.* at *1 (footnote omitted) ("It is clear that this case was not transferred to the General Sessions Court, but rather was tried by the judge of that court sitting by interchange in the Juvenile Court."). In a similar case, we looked at the orders drafted in the trial court to hold that a case that was transferred from criminal court to probate court, which had jurisdiction over criminal actions, was adjudicated in probate court even though a circuit judge without criminal jurisdiction presided over the action by interchange. *State v. Coolidge*, 915 S.W.2d 820, 824 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Troutman*, 979 S.W.2d 271 (Tenn. 1998) ("The trial here, however, was not in the Fourth Circuit Court but, instead, in the Probate Court for Davidson County, a court established by a separate act. Those drafted orders, as opposed to those appearing on forms, bear the caption 'In the Probate Court of Davidson County,' Case No. SN-9958."). Other cases confirm that while judges from other courts were sitting by interchange, the cases were not transferred to the courts over which the interchanged judges typically presided. *See, e.g.*, *In re Estate of Nelson*, 2007 WL 851265, at *7 n.6 ("[W]e treat this judgment as one entered by the general sessions probate court because the chancellor was sitting for the general sessions probate judge by interchange."); *Richards v. Richards*, No. 01-A-01-9005-CV00164, 1991 WL 66443 (indicating that the case came out of probate court, though a circuit court judge decided it by interchange); *Catignani v. Catignani*, No. 89-147-II, 1989 WL 126726, at *1 (Tenn. Ct. App. Oct. 25, 1989) (indicating that the case came out of probate court, though a chancellor presided over the case by interchange).

Again, the pleadings and filings in this case do not indicate that a simple interchange occurred. Rather, these documents indicate that this matter was actually transferred to circuit court. Circuit court does not, however, have jurisdiction over estate matters other than will contests. *See Tennessee Circuit Court Practice*, § 3.5, at p. 214–15. Although we are reluctant to invalidate an entire proceeding given the limited scope of this appeal, we are constrained by the law to correct issues of subject matter jurisdiction "whenever it is . . . demonstrated." *Dishmon*, 15 S.W.3d at 480. Moreover, Judge Higgins appears to have acted at all times in good faith and may again be designated to preside over this case by interchange in probate court. It is therefore not unreasonable to imagine that identical rulings will be made by her in the probate court. Still, the error in this case simply cannot be ignored through the application of the harmless error doctrine. *See Sawyers v. State*, 814 S.W.2d 725, 727 (Tenn. 1991) ("A court cannot commit 'harmless error' in an action over which it has no jurisdiction in the first place."); 1 Tenn. Cir. Ct. Prac. § 3:2 (citing

2007) (involving a case decided by a chancellor sitting by interchange in Madison County Probate Court); *Richards v. Richards*, No. 01-A-01-9005-CV00164, 1991 WL 66443 (Tenn. Ct. App. May 1, 1991) (involving a case decided by a circuit judge sitting by interchange in Davidson County Probate Court).

*Sawyers*, 814 S.W.2d at 727) ("A court's exercise of subject matter jurisdiction which it does not possess cannot be saved by the 'harmless error'"). Simply put, the significant errors in how this case was handled following the recusal of Judge Gomes have led to an action being transferred to a court that lacked subject matter jurisdiction. And although this issue was raised in the circuit court, it apparently was not fully pursued. All of the orders entered by a court without subject matter jurisdiction are void. *Dishmon*, 15 S.W.3d at 480 ("Judgments or orders entered by courts without subject matter jurisdiction are void . . . ."). We therefore must vacate the order appealed, as well as all of the other orders entered in this case by the circuit court because it lacked subject matter jurisdiction.[11]

In the typical case, the lack of subject matter jurisdiction in the trial court requires that we not only vacate the judgment of the trial court, but also dismiss the action. *Culbertson v. Culbertson*, 455 S.W.3d 107, 126 (Tenn. Ct. App. 2014) (citing *First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001)) ("[W]hen the appellate court determines that the trial court lacked subject matter jurisdiction, the appellate court must vacate the judgment below and dismiss the case without reaching the merits of the appeal."). Moreover, it is the general rule that a court lacking subject matter jurisdiction over a case "has no authority to transfer it, unless that authority is specifically conferred by statute, rule, or constitutional provision." *Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn. 1995). In 2000, however, the Tennessee General Assembly enacted a general transfer statute, which provides as follows:

> Notwithstanding any other provision of law or rule of court to the contrary, when an original civil action, an appeal from the judgment of a court of general sessions, or a petition for review of a final decision in a contested case under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, is filed in a state or county court of record or a general sessions court and such court determines that it lacks jurisdiction, the court shall, if it is in the interest of justice, transfer the action or appeal to any other such court in which the action or appeal could have been brought at the time it was originally filed. Upon such a transfer, the action or appeal shall proceed as if it had been originally filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it was transferred.

Tenn. Code Ann. § 16-1-116. Although this case was not originally filed in circuit court, it was initially filed in the proper court, and was removed through no apparent fault of any party. Transfer back to probate court is therefore appropriate in this case. As such, we vacate all orders entered by the circuit court in this matter and remand with directions for this case to be transferred back to probate court. The Presiding Judge is then directed to

---

[11] Because of the limited and interlocutory nature of this appeal, additional rulings could have been made by the circuit court while this appeal was pending. These orders are likewise invalid. *Id.*

enter an order designating another judge to sit by interchange in the probate court.[12] Should the probate court sitting by interchange again grant Williams McDaniel's motion to intervene, an immediate appeal of that order will be available under Rule 24.05.

## CONCLUSION

The judgment of the Shelby County Circuit court is vacated, and this cause is remanded to the trial court with instructions to transfer the matter back to Shelby County Probate Court and for the entry of a proper order of interchange by the Presiding Judge of the Thirtieth Judicial District. Costs of this appeal are taxed one-half to Appellant Nancy Neely, and one-half to Appellee Williams McDaniel, PLLC, for all of which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[12] Nothing in this Opinion should be construed as preventing the Presiding Judge from designating Judge Higgins to sit by interchange in probate court for purposes of this case.